Grafton
Nos. 99-234
    99-595

## NORTH COUNTRY ENVIRONMENTAL SERVICES, INC.

### v.

### TOWN OF BETHLEHEM

### TOWN OF BETHLEHEM

### v.

## NORTH COUNTRY ENVIRONMENTAL SERVICES, INC.

May 1, 2001

*Brown, Olson & Wilson, P.C.*, of Concord (*Bryan K. Gould & a.* on the brief, and *Mr. Gould* orally), for North Country Environmental Services, Inc.

*Waystack & King*, of Colebrook (*Philip R. Waystack, Jr.* and *Jonathan S. Frizzell* on the brief, and *Mr. Waystack* orally), for the Town of Bethlehem.

*Hughes, Smith & Yazinski, LLP*, of Claremont (*John J. Yazinski* on the brief), for Aware, Inc., as *amicus curiae.*

*Boutin & Associates, P.L.L.C.,* of Londonderry (*Edmund J. Boutin* on the brief), for Environmental Action of Northern New Hampshire, Inc., as *amicus curiae.*

DUGGAN, J. This dispute arises out of the private landfill operations of North Country Environmental Services, Inc. (NCES) and its predecessors-in-interest. The parties both appeal rulings by the Superior Court (*Fitzgerald,* J.) upon NCES' petition for declaratory relief and the petition of the Town of Bethlehem (town) for injunctive relief. We affirm.

In 1976, Harold Brown, the original owner of an eighty-seven-acre parcel located in Bethlehem, received a variance from the Town of Bethlehem Zoning Board of Adjustment (ZBA) to operate a landfill. Brown obtained State approval to operate the landfill within a nearly four-acre footprint on his property. In 1977, Brown obtained State approval to expand the original footprint by approximately one acre; he did not seek town approval for this expansion.

In 1983, Brown obtained permission from the town planning board to create a ten-acre subdivision on the property for landfill use, and then sold this lot to Sanco, Inc. (Sanco). In 1985, Brown obtained permission from the planning board to create a forty-one-acre subdivision on the property for landfill use, and then conveyed this lot to Sanco as well.

Sanco applied for a special exception to expand the existing landfill onto the forty-one-acre parcel and to construct a solid waste transfer station on another adjacent lot. After initially denying the special exception, the ZBA granted it in November 1985, subject to "limiting terms and safeguards set forth in an agreement to be negotiated between Sanco, Inc. and the Board of Selectmen." In January 1986, the ZBA imposed twenty-three conditions that had to be satisfied before Sanco could operate the expanded area as a landfill. One condition required Sanco to give the town a "tipping fee" discount on the town's own solid waste. Another required Sanco to pay the town a surcharge for all waste brought to the landfill from outside the town.

Over the years, the town, NCES, its predecessors-in-interest, abutters and public interest groups disputed the landfill's continued operation and expansion. In March 1987, at a town meeting, the town amended its zoning ordinance to prohibit the existence of any privately owned solid waste disposal facility in any town district. At a 1992 town meeting, the town again amended its zoning ordinance to prevent the location of any "solid waste disposal facility, site or expansion of any existing landfills . . . in any district except a facility operated by the Town."

In March 1987, Sanco requested permission from the State to expand the landfill in four phases, a design requiring approximately eighteen acres (Stage I). The State approved Sanco's Stage I application in June 1987, and shortly thereafter, Sanco began Stage I operations.

In June 1988, Sanco requested permission from the State to expand the landfill in two phases comprising approximately seven acres (Stage II). The State granted the Stage II application in April 1989. Sanco thereafter conveyed the land to NCES. NCES began phase one of the Stage II expansion in 1996. NCES received State approval to begin phase two of the Stage II expansion in September 1998. The current dispute stems from NCES' proposed September 1998 expansion.

The town petitioned to enjoin the September 1998 expansion. NCES petitioned for declarations that: (1) the 1987 and 1992 zoning amendments are preempted by RSA chapter 149-M; (2) the 1987 and 1992 zoning amendments are arbitrary and discriminatory and thus void; (3) the 1987 and 1992 zoning amendments are unconstitutional; (4) there is no size limitation on the uses granted by the 1976 variance or the 1985 special exception, and thus NCES "has all local approvals necessary to conduct landfilling operations on the [entire] 87-Acre Parcel"; (5) the 1987 and 1992 zoning amendments do not apply to NCES because use of the ten-acre and forty-one-acre lots as landfill was permitted by the 1976 variance and 1985 special exception; and (6) the tipping fee discount and surcharge for out-of-town waste required by the 1986 conditions to the special exception are unlawful. The court bifurcated NCES' claim regarding the tipping fee discount and surcharge from the remainder of the parties' claims.

Following a hearing on the merits, the trial court found that neither the 1987 nor the 1992 zoning amendment conflicted with RSA chapter 149-M, and thus preemption did not apply. The court declined to rule upon the validity of the amendments, however, because it concluded that they did not apply to NCES' operations and thus the controversy was not justiciable. The court ruled that, pursuant to the 1976 variance and the 1985 special exception, NCES could expand its landfill uses through the ten-acre and forty-one-acre parcels of the original eighty-seven-acre tract. The court found that the 1986 special exception did not expressly limit the landfill to any area less than the full extent of the forty-one-acre lot conveyed to Sanco in 1985. The court ruled, however, that NCES was estopped by Sanco's conduct from relying upon the 1976 variance to claim a right to develop the entire eighty-seven-acre parcel. The court

found that Sanco had waived any right to claim the 1976 variance granted landfill rights to the entire parcel and that NCES was bound by Sanco's conduct as its successor-in-interest. The town, the court ruled, was also estopped from claiming any right to enjoin NCES from operating the landfill on the ground that Brown's 1977 expansion of it was illegal. Finally, the court declined to award attorney's fees and costs to NCES because it found no evidence of bad faith.

In its motion for clarification/reconsideration, the town requested the court to confirm that the 1976 variance and the 1985 special exception "contain [areal] limits relative to the landfill operations of NCES." The court concluded that neither the 1976 variance nor the 1985 special exception "contain[] any express area limitation as to the permitted landfill uses on either the 10-acre or 41-acre lots." The court further clarified that the 1976 variance applied only to the ten-acre lot and that NCES was precluded from claiming any present right under it to develop landfill uses throughout the entire eighty-seven-acre tract.

The town also asked the court to reconsider its application of municipal estoppel. The court based its original municipal estoppel ruling upon the town's stipulated dismissal of a prior lawsuit. In response to the town's motion for reconsideration, the court confirmed that the town's stipulation and NCES' subsequent reliance upon it precluded the town from asserting any right to enjoin NCES' landfill operations based upon the 1977 expansion.

Thereafter, the town moved to dismiss NCES' claim regarding the tipping fee discount and surcharge on the ground that the court lacked subject matter jurisdiction, which the court denied. The court granted NCES' motion for partial summary judgment, however, finding that the tipping fee discount and surcharge for out-of-town waste were unlawful because they bore no rational nexus to "actual impacts upon either Town services or infrastructure." The town's appeal and NCES' cross-appeal followed.

### I. 1987 and 1992 Zoning Amendments

NCES challenges the trial court's determination that RSA chapter 149-M does not preempt the 1987 and 1992 zoning amendments. NCES also asks this court to find the amendments invalid for a host of other reasons.

As a threshold matter, we note that the trial court found that the 1987 and 1992 zoning amendments did not apply to NCES' operations on the ten-acre and forty-one-acre lots because the uses

established thereon were pre-existing and permitted at the time of the 1987 amendment. Neither party has appealed this ruling.

Although the town neither included this issue in its notice of appeal nor raised it before the trial court, it argues in its brief that NCES' construction activities violate the amendments and constitute an impermissible expansion of a non-conforming use. This argument has not been preserved for our review and we do not address it. *See Bursey v. Bursey*, 145 N.H. 283, 287 (2000). Even if it had been preserved for our review, we could not address the argument because it raises issues of fact that were not decided below. *See Hurley v. Town of Hollis*, 143 N.H. 567, 572 (1999) (whether a proposed use would be a "substantial change in the nature or purpose of the pre-existing nonconforming use turns on the facts and circumstances of the particular case").

We therefore affirm the trial court's determination that neither the 1987 nor the 1992 amendments apply to NCES' operations on the ten-acre and forty-one-acre lots because they were pre-existing, permitted uses at the time of the 1987 amendment. *See* RSA 674:19 (1996). Accordingly, we need not decide whether the amendments are preempted by RSA chapter 149-M or otherwise are invalid.

As a result of our ruling regarding the 1987 and 1992 amendments, NCES' argument concerning a "builder's remedy" lacks merit and warrants no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

## II. 1976 Variance

### A. Limits on Size of Landfill

The town argues that the trial court erroneously interpreted the 1976 variance to contain no limitation on the area NCES' land filling operations could occupy on the ten-acre lot and requests that we remand for a determination as to the extent of the limitations. Because we find no error in the trial court's ruling on this issue, we conclude that a remand is unnecessary.

"The scope of a variance is dependent upon the representations of the applicant and the intent of the language in the variance at the time it is issued." *Dahar v. Department of Bldgs.*, 116 N.H. 122, 123 (1976). The language of the variance contains no express limitation on the area to be used for land filling. The letter from the ZBA to Brown, approving his request for a variance, simply states that the request is "granted and approved, subject to complete state

approval and subsequent supervision." Although Brown's request for a variance contained a crude map showing the proposed landfill's approximate location, it contained no statement regarding the proposed landfill's expected dimensions.

The town urges us to find that a limit on the size of the landfill was "implied" by the use of the word "construct" and by the variance's reference to future State approval and supervision. NCES counters that only express conditions on land use are enforceable as a matter of law. Even if we assume, *arguendo*, that implied conditions are enforceable, we hold that the 1976 variance contained no "implied" limitation on the size of the landfill on the ten-acre lot.

### B. Waiver of Right to Rely Upon 1976 Variance

NCES argues that the trial court erroneously found that Sanco impliedly waived the right to rely upon the 1976 variance to use the entire eighty-seven-acre parcel as a landfill and that NCES was bound by this waiver. It asserts that Sanco had no duty to assert this right and thus could not have validly waived it. It also argues that the trial court erroneously found that Sanco applied for a special exception, when in fact it applied for a building permit. We affirm the trial court's rulings on this issue.

"A finding of waiver must be based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it." *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 79 (1991) (quotation omitted). "Whether an implied waiver occurred is a question of fact, and we will not overturn the trial judge's determination that . . . waiver occurred, unless such a finding is clearly erroneous." *Id.*

The trial court's finding of waiver was based, in part, upon Sanco's failure to assert that it did not need a special exception because its activities were permitted by the 1976 variance. The court concluded that "on the evidence before it," Sanco apparently assumed that the 1976 variance did not apply to the entire eighty-seven-acre tract or to the forty-one-acre lot on which the proposed expansion was to be constructed. The court thus found that Sanco agreed that additional municipal approvals were necessary to expand its landfill operations beyond the ten-acre parcel conveyed to it in 1983.

The trial court's findings are supported by the record. The ZBA's November 1985 decision granting the special exception explains that although Sanco initially applied to the town's board of selectmen for a permit to build a solid waste transfer station and expand an existing solid waste landfill, the selectmen referred the matter to

the ZBA for review. The ZBA's November 1985 decision also notes that at an August 13, 1985 hearing, Sanco specifically *requested* that the ZBA allow the proposed use as a special exception. This request is incompatible with the assertion that the 1976 variance permitted Sanco to expand the landfill onto the entire eighty-seven-acre tract.

*III. 1985 Special Exception*

The town argues that the trial court also erroneously interpreted the 1985 special exception to contain no limitation on the size of NCES' landfill on the forty-one-acre lot. As with the 1976 variance, neither the 1985 special exception, nor the 1986 conditions attached thereto, contain any express limitation on the size of the landfill. The town argues that because fourteen of the conditions use the term "expansion area," we must find an implied limit on the size of the landfill. We decline to do so. The phrase "expansion area" does not impliedly limit the size of the landfill to anything less than the entire forty-one acres.

Alternatively, the town asserts that the trial court erred by excluding a document from evidence that the town claims demonstrated that the parties understood that the 1985 special exception applied to a fourteen-acre landfill. The document, titled "Bethlehem Zoning Board of Adjustment Hearing, August 13, 1985, Summary of Proposed Sanco Facility," states that the "[t]otal area of expansion is approximately 14 acres." Although it lists no author, at trial, the town contended that it was authored by Sanco. The court excluded the document on the ground that the town failed to authenticate it. *See* N.H. R. EV. 901.

Rule 901(a) provides that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This court will not overturn a trial judge's authentication ruling absent a clear abuse of discretion. *State v. Moscillo*, 139 N.H. 79, 80 (1994). "To show an abuse of discretion, the [town] must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of [its] case." *Powell v. Catholic Med. Center*, 145 N.H. 7, 15 (2000) (quotation omitted).

Assuming, *arguendo*, that the trial court's authentication ruling was erroneous, we hold that the error did not prejudice the town's case. There was no evidence that this document, prepared in August 1985, was considered by the ZBA when it granted the special exception in November 1985 or imposed conditions upon it in

January 1986. The document was not referenced in any ZBA minutes or in any other document. There was simply no evidence before the court linking this document to the special exception eventually granted in November 1985.

## IV. 1977 Expansion and Estoppel

The town contests the trial court's determination that the town was estopped from enjoining NCES' operations on the ground that Brown's 1977 expansion of the landfill was unlawful. We affirm the trial court's ruling.

■ "The application of estoppel rests largely on the facts and circumstances of the particular case." *Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 289 (1992) (quotation and brackets omitted). "The party invoking estoppel has the burden of proving that its application is warranted, and its existence is a question of fact to be resolved by the trier of fact." *Id.* (quotation and ellipsis omitted). Although estoppel may be invoked against a town, it must be applied "with caution and only in exceptional cases under circumstances clearly demanding its application to prevent manifest injustice." *Town of Seabrook v. Vachon Management*, 144 N.H. 660, 666 (2000) (quotation omitted).

The trial court based its municipal estoppel ruling upon the parties' stipulation settling a prior lawsuit. The prior lawsuit concerned a 1993 cease and desist order issued by the town's selectmen, in which the town challenged the scope of the 1976 variance. The cease and desist order was based upon the selectmen's determination that Brown's 1977 expansion of the landfill violated his 1976 variance. In the stipulation, the parties stated that "the issues raised in [that lawsuit] have been resolved and the Town's threatened enforcement action against the plaintiff arising out of the . . . cease-and-desist order . . . has become moot." In the stipulation, the parties also "acknowledge that they may, in the future, have further disputes over permitting of further areas of the landfill" and thus they "agree that this case may be dismissed without prejudice to their right, should a ripe dispute arise between them, to advance any cognizable theory of recovery or defense against the opposing party."

The town argues that the court erroneously interpreted the stipulation to have resolved any claims regarding the legality of Brown's 1977 landfill expansion. It asserts that the stipulation, in fact, preserved the parties' right to litigate this issue "in the event that NCES . . . sought to expand [the landfill] into [another part of the ten-acre parcel]."

We hold that the trial court's interpretation of the stipulation was not erroneous. The stipulation stated that the issue in that lawsuit, namely, the legality of Brown's 1977 expansion, was "resolved." The trial court correctly ruled that this statement precluded the town from relying upon the asserted illegality of the 1977 expansion to enjoin NCES' operations.

*V. Tipping Fee Discount and Surcharge*

The town disputes the trial court's grant of partial summary judgment to NCES in which it ruled that the tipping fee discount and surcharge for out-of-town waste were unenforceable. "In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party." *Ianelli v. Burger King Corp.*, 145 N.H. 190, 193 (2000). "If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *Id.* (quotation omitted). "We review the trial court's application of the law to the facts *de novo*." *Id.*

The town first asserts that NCES was barred from litigating the lawfulness of these conditions to its 1985 special exception, because its predecessor, Sanco, did not appeal these conditions when they were first imposed. *See* RSA 677:4 (Supp. 2000) (amended 2000). We disagree.

The town asserts that these conditions were imposed as part of a negotiated agreement between Sanco and the town's selectmen. Assuming, *arguendo*, that this is true, then Sanco "had no reason to challenge the zoning arrangement, which was mutually agreeable to both sides." *City of Portsmouth v. Schlesinger*, 140 N.H. 733, 735 (1996). It would have been illogical for Sanco to have agreed to the conditions and thereafter to file an appeal on the ground that they were illegal. *See id.* We find the town's efforts to distinguish *Schlesinger* unpersuasive. In *Schlesinger*, we ruled that developers, who agreed to pay the city council $2.5 million in exchange for the city's creation of a special zoning district, could dispute the legality of these payments even though they had not appealed the payments when they first agreed to them. *Id.* We held that the developers were not aggrieved parties because they "had procured exactly what they sought — a special zoning overlay ordinance in exchange for the $2,500,000 payment." *Id.* Because they were not aggrieved parties, they could raise the affirmative defense of illegality even though

they had not timely appealed the city's action. *Id.* Similarly, NCES' predecessor, Sanco, procured exactly what it wanted — a special exception. Because it was not aggrieved by the ZBA's grant of a special exception, it had no duty to appeal it, and its failure to appeal does not bar its current challenge.

The town next argues that Sanco waived the right to dispute the legality of the tipping fee discount and surcharge when it entered into the alleged agreement with the town's selectmen. The town asserts that the alleged agreement was incorporated in the ZBA's decision imposing twenty-three conditions upon Sanco's special exception. Although the ZBA granted Sanco the special exception subject to the "limiting terms and safeguards set forth in an agreement to be negotiated between Sanco, Inc. and the Board of Selectmen," and the ZBA's decision imposing the conditions refers to this agreement, the agreement itself is not part of the record, and thus we are unable to review it to determine if it contains the waiver the town alleges.

The town next contests the trial court's determination that there was no "rational nexus" between the tipping fee discount and surcharge and "actual impacts upon either Town services or infrastructure." The trial court based its ruling upon the ZBA's failure to include findings in its decision demonstrating that a rational nexus existed. On appeal, the town does not assert that, in fact, there was a rational nexus. Rather, its only argument is that, by basing its ruling upon the ZBA's failure to include findings in its decision, the court "impermissibly shifted the burden of proof" to the town to establish the rational nexus. We disagree.

Our review of the record shows that the only evidence regarding nexus was provided by NCES. The town introduced no contrary evidence of its own. In this context, particularly, regardless of which party had the burden of proof, the court was entitled to review the ZBA's decisions to determine whether a nexus existed. *See Peabody v. Town of Windham*, 142 N.H. 488, 492 (1997) (factual findings of zoning board are *prima facie* lawful and reasonable). We do not interpret the trial court's reliance upon the ZBA's failure to include such findings as a statement regarding burden of proof.

*VI. Attorney's Fees*

■ NCES argues that the trial court erroneously failed to award it attorney's fees. It asserts that it is entitled to attorney's fees because the town acted in bad faith when it passed the 1987 and 1992

amendments to the zoning ordinance and attempted to enforce them against NCES. We disagree.

"Where a party is forced to seek judicial assistance to secure a clearly defined right, a court may award attorney's fees to the prevailing party if bad faith on the part of the losing party is established." *Taber v. Town of Westmoreland*, 140 N.H. 613, 616 (1996). "In reviewing a superior court award of attorney's fees, we apply an abuse of discretion standard, giving tremendous deference to the court's decision." *Glick v. Naess*, 143 N.H. 172, 175 (1998) (quotation, citation and brackets omitted). "To constitute abuse, reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party." *Id.* (quotation omitted). If there is some support in the record for the trial court's determination, we will uphold it. *Id.*

We find no abuse of discretion in the trial court's denial of attorney's fees. The court could properly have determined that the application of the town's zoning amendments to NCES, and the town's ability to zone generally as to landfill uses, "was a fair and reasonable ground for litigation." *Casico v. City of Manchester*, 142 N.H. 312, 318 (1997).

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.