NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

10th Circuit Court-Brentwood Probate Division
No. 2018-0268

KENNETH T. RISO & a.

v.

GREGORY R. RISO & a.

Argued: February 20, 2019
Opinion Issued: May 10, 2019

Devine, Millimet & Branch, Professional Association, of Manchester (William F. Gramer on the brief and orally), for the petitioners.

Myskowski & Matthews, PLLC, of Concord (Jan P. Myskowski on the brief and orally), for the respondent.

LYNN, C.J. Respondent Gregory R. Riso appeals an order of the Circuit Court (Weaver, J.) denying his second post-trial motion for reconsideration based on the court's finding that he forfeited his right to a statute of limitations defense.[1] We affirm.

---

[1] While the parties' other siblings, Ronald R. Riso and Carolyn A. Campbell, were listed as respondents on pleadings in the trial court, Gregory R. Riso is the sole respondent on appeal.

The following facts are drawn from the trial court's orders, or are otherwise supported by the record and undisputed on appeal. On June 8, 2016, the petitioners, Kenneth T. Riso and Rocco R. Riso, Jr., filed a petition in the trial court requesting the partition of property in Raymond that was held by them and their siblings as tenants in common following the death of their mother on March 10, 2012. The petition also sought relief against the respondent individually for money allegedly converted by the respondent from his mother's estate. Specifically, the petition asserted three claims against the respondent for breach of fiduciary duty, conversion, and fraudulent misrepresentation. These claims stemmed from two checks that the respondent drew from his mother's personal account under authority of a durable power of attorney she executed prior to her death. The first check, in the amount of $65,000, was dated March 6, 2012, and was made payable to the respondent. The second check, in the amount of $8,825, was dated March 7, 2012, and was made payable to an individual whose deceased husband had completed work on the property. Both checks were processed for payment on March 15, 2012. The respondent filed an answer on August 29, 2016, in which he asserted, among other things, that the petitioners' claims were barred by the statute of limitations.

After further pleadings and a structuring conference, the case proceeded to trial. At trial, the respondent testified that the March 6 and March 7 checks (the checks) were written at his mother's request while she was in the hospital prior to her death. The respondent further testified that his mother wanted him to be reimbursed for expenses related to work he had done on the property.

Following trial, on September 29, 2017, the petitioners submitted their proposed findings of fact and conclusions of law to the trial court. In support of their claim that the respondent breached his fiduciary duties, the petitioners asserted, in Paragraph 83 of their filing, that they had not learned of the checks until "approximately a year" after their mother's death, when the respondent had produced the checks in discovery during probate litigation in Florida concerning their mother's estate.

The trial court issued its adjudicatory order on December 4, 2017. In its order, the court concluded that the respondent was not a credible witness, and thus that there was no evidence that his mother had agreed to pay him for monies he spent on the property or authorized him to sign the checks at issue. In addition, the court found that, based on the credible evidence before it, the checks were written after the parties' mother had died and the respondent's authority under the power of attorney had ended. The court also found that the petitioners learned of the checks "well over a year" after March 2012, during the discovery process in separate litigation. Applying principles of

equity, the trial court ordered that the proceeds from the sale of the home be distributed to the mother's children, excluding the respondent, according to their respective ownership percentages.

Following this order, both the respondent and the petitioners filed motions to reconsider. Both motions challenged the analysis conducted by the trial court in its initial order. The respondent did not pursue his statute of limitations defense in his motion to reconsider. The trial court ruled on these motions in an order dated February 20, 2018. The court granted the respondent's motion to the extent that it contained arguments raised by the petitioners in their motion for reconsideration that was also granted. At the request of the petitioners, the court made a finding of conversion, determining that the respondent had "wrongfully converted the funds of his mother's estate when he wrote and delivered the two checks." The court declined to rule on the petitioners' claims for fraudulent misrepresentation and breach of fiduciary duty. Accepting both parties' arguments that there was insufficient evidence to uphold the court's original instructions on how the property's proceeds should be distributed, the court allowed the respondent to receive his ownership share. However, this share was to be applied against the amount the court found that the respondent owed the estate — i.e., the total of the checks. On the same day that it issued this order, the trial court also granted as a finding of fact the request contained in Paragraph 83 of the petitioners' proposed findings and rulings.

On March 1, 2018, nearly two years after the petition in this case was filed and following the trial court's ruling on the parties' initial motions to reconsider, the respondent filed a second motion to reconsider in which he pursued, for the first time, the statute of limitations defense originally raised in his answer. The trial court denied the respondent's motion, concluding that, by actively participating in litigation and failing to present his limitations defense until a post-trial motion to reconsider, the respondent had forfeited his right to the defense. This appeal followed. [2]

---

[2] While the parties do not dispute the timeliness of the respondent's appeal, we note that generally, under Rule 7, "successive post-decision motions," such as a second motion to reconsider, see Super. Ct. Civ. R. 12(e), "filed by a party that is not a newly-losing party will not stay the running of the appeal period." Sup. Ct. R. 7. In this instance, however, we believe that the trial court's analysis in its order on the parties' motions to reconsider was significantly distinct from its initial decision on the merits, so as to change the outcome of the case. Whereas the respondent was denied his ownership percentage under principles of equity in the court's original decision, he was found liable for conversion in the court's order on the parties' motions to reconsider, and ordered by the court to pay the monies owed to his mother's estate. We find this change in remedy significant enough to deem the respondent a "newly-losing party" under Rule 7, and thus find his mandatory appeal from a decision on the merits timely. See Sup. Ct. R. 7.

## II

We have not previously had occasion to consider whether a party, through its conduct in the trial court, may abandon its ability to pursue an affirmative defense pleaded in its answer. While generally we review a trial court's denial of a motion to reconsider for an unsustainable exercise of discretion, see Broom v. Continental Cas. Co., 152 N.H. 749, 752 (2005), the issue presented by this appeal more closely resembles that of a trial court's finding of waiver, which we review for clear error, see So. Willow Properties v. Burlington Coat Factory of N.H., 159 N.H. 494, 499 (2009) ("Waiver is a question of fact and we will not overturn the trial judge's determination unless clearly erroneous."). We observe that the trial court, in denying the respondent's motion for reconsideration, concluded that he had "forfeited" his limitations defense. We have recognized in the past that the terms "waiver" and "forfeiture" are not synonymous. See State v. Richard, 160 N.H. 780, 786 (2010) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment of a known right." (quotation omitted)). However, our precedents reflect that we have traditionally included in our analysis of waiver evidence of a party's conduct that justifies "an inference of a relinquishment" of a right, even if not explicitly expressed. So. Willow Properties, 159 N.H. at 499; N. Country Envtl. Servs. v. Town of Bethlehem, 146 N.H. 348, 354 (2001). Thus, we apply clear error review to the circumstances of this appeal, while acknowledging that "where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." AIIC v. Robert Seuffer GMBH & Co. KG, 9 N.E.3d 289, 291 n.2 (Mass. 2014) (quotation and brackets omitted). For this reason, "we use the term forfeiture rather than waiver in our analysis." Id.

The respondent first contends that by pleading the defense in his answer, he notified the petitioners of the defense "at the earliest stage possible," allowing them the opportunity to produce rebuttal evidence and ensuring that they would not be surprised or unduly prejudiced by a later assertion of the defense. The petitioners, on the other hand, assert that, because the respondent pleaded the defense in his answer, it was then his burden to prove the elements of the defense. They further argue that it was not until after the respondent had so proven the defense, that they had an obligation to present rebuttal evidence.

Statutes of limitations govern the period within which actions must be brought, Lakeman v. LaFrance, 102 N.H. 300, 303 (1959), and are "designed to expedite the orderly administration of justice," Torr v. Dover, 107 N.H. 501, 503 (1967). The parties do not dispute that the statute of limitations applicable here is RSA 508:4, I. It provides:

4

Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I (2010).

In support of his argument, the respondent asserts that the trial court's finding of forfeiture "is contrary to the public policy behind the statute of limitations." He contends that statutes of limitations are designed to "eliminate stale or fraudulent claims," "promote repose by giving security and stability to human affairs," and prevent plaintiffs from sleeping on their rights. He further argues that the trial court's ruling is unfair, as it requires him to "defend claims against him after memories have faded" and fails to "give security to potential defendants that they will not be required to defend against stale claims."

While we agree with the respondent that the "principal purpose" behind statutes of limitations is to "eliminate stale or fraudulent claims," see West Gate Village Assoc. v. Dubois, 145 N.H. 293, 298 (2000), we note that in relying on these policy considerations, the respondent has overlooked the procedures set in place to address claims that may be filed outside of the applicable statutory timeframes. These procedures clearly put the burden on the respondent to both raise and timely pursue a statute of limitations defense. As we have previously stated, the statute of limitations constitutes an affirmative defense that the defendant bears the burden of proving. Beane v. Dana S. Beane & Co., 160 N.H. 708, 712 (2010).

The respondent further contends that, having been put on notice by his answer, it was the petitioners who failed to present any evidence of the discovery rule — i.e., that they were unaware of their injury until a point in time within the statute of limitations. See id. at 713. According to our case law, however, the respondent was required to do more than just put the petitioners on notice before they were expected to produce rebuttal evidence. See id. at 712-13. As we indicated in Beane, it is only after a defendant has established that the statute of limitations would bar the action that the plaintiff has the burden of raising and proving the applicability of the discovery rule. See id. at 713 (emphasis added); see also 51 Am. Jur. 2d Limitations of Actions § 397, at 803-04 & nn.1, 2 (2011) (stating that while some jurisdictions follow the rule that "once the defendant has pleaded the statute of limitations, the burden is on the plaintiff to show that the action was brought within the

5

applicable period," New Hampshire precedent places the burden on the defendant to prove "every element necessary to establish it"). Thus, contrary to the respondent's assertion on appeal, there was no obligation on the part of the petitioners to put forth evidence rebutting the statute of limitations defense until the respondent had proven its applicability to the case. Beane, 160 N.H. at 713.

The respondent also argues that the trial court erred in finding his limitations defense forfeited because, having been put on notice by his answer, the petitioners were not surprised or unduly prejudiced by his post-trial pursuit of the defense. In support of this argument, he cites Bryant v. Wyeth, Inc., 816 F. Supp. 2d 329 (S.D. Miss. 2011). We find this case inapposite. In Bryant, the court stated that a statute of limitations defense that is raised in an answer is not forfeited, so long as it is pursued at "a pragmatically sufficient time." Id. at 332-33 (quotation omitted). There, the court concluded that the defendant had sought dismissal on statute of limitations grounds "well in advance of trial," and thus that the plaintiff had failed to show "that any delay ha[d] adversely affected its ability to fully and adequately respond to the motion on the facts and the law." Id. at 333.

Here, however, the respondent engaged in active litigation, including proceeding to trial on the merits and filing an initial motion to reconsider, yet failed "to pursue the statute of limitations defense in any way until his filing of a second motion for reconsideration." Indeed, the trial court concluded that, after raising the defense in his answer, the respondent failed to: (1) conduct discovery in furtherance of the defense, e.g., through depositions, interrogatories, or requests for admissions; (2) pursue the defense in his pre-trial pleadings or in his post-trial memorandum of law; (3) press the defense at the structuring conference or at trial; or (4) assert the defense in his first motion to reconsider. Most importantly, the trial court noted that the respondent failed to comply with Probate Division Rule 62, which mandates that, ten days prior to the structuring conference, the parties "shall file summary statements necessary to support their respective claims, defenses or counterclaims." Prob. Div. R. 62 (emphases added). Rule 62 further provides that the summary statements "shall be comprehensive and made in good faith," and that "[t]he purpose of [the statement] is to apprise the court of the nature of the claims, defenses, and legal issues likely to arise." Id. (emphases added). As found by the trial court, however, "the respondent's summary statement made no mention of a statute of limitations defense," and similarly, he did not raise a limitations defense at the subsequent structuring conference. Thus, unlike Bryant, the respondent here did not pursue his limitations defense "well in advance of trial," Bryant, 816 F. Supp. 2d at 333, but instead waited until after trial had concluded, and a decision on the merits had issued, to press the defense. That the respondent delayed the pursuit of his defense until after trial also sets this case apart from the other cases relied upon by the respondent, all of which involve circumstances in which the defendant pursued

its limitations defense <u>prior</u> to trial.  <u>See</u> <u>Wright v. Food Giant, Inc.</u>, 394 S.E.2d 610, 611 (Ga. Ct. App. 1990) (stating that limitations defense raised in answer was pursued before trial in a motion for summary judgment); <u>Daingerfield Island Protective Soc. v. Babbitt</u>, 40 F.3d 442, 444 (D.C. Cir. 1994) (stating that limitations defense raised in answer, although pursued after first appeal, was pressed prior to trial in a motion for summary judgment).

The Supreme Judicial Court of Massachusetts has provided guidance in determining whether a trial court has erred in finding that a party, despite having timely raised an affirmative defense in its answer, has forfeited that defense through its conduct in the trial court.  <u>See</u> <u>AIIC</u>, 9 N.E.3d at 297-98.  In <u>AIIC</u>, the court was tasked with deciding whether the trial court had correctly ruled that the defendant forfeited its defense of lack of personal jurisdiction.  <u>Id</u>. at 291, 293.  In so doing, the court stated that "[t]he inquiry whether a party has forfeited a defense . . . necessarily will be fact sensitive, requiring a thorough assessment of the parties' conduct throughout the litigation."  <u>Id</u>. at 297.  The court then listed "[f]actors that could be relevant to such an inquiry," including: (1) "the amount of time that has elapsed, as well as the changed procedural posture of the case, in the period between the party's initial and subsequent assertion of the defense"; (2) "the extent to which the party engaged in discovery on the merits"; and (3) "whether the party engaged in substantive pretrial motion practice or otherwise actively participated in the litigation."  <u>Id</u>. at 297-98.

In looking to <u>AIIC</u>, we recognize that an affirmative defense of lack of personal jurisdiction is different in nature from an affirmative defense based upon the statute of limitations.  <u>See</u> <u>id</u>. at 296 & n.10.  A party who has raised a personal jurisdiction defense in its answer may signal to a trial court "that it is submitting to the court's jurisdiction" merely by filing further pleadings or appearing before the court in future stages of the litigation.  <u>See</u> <u>id</u>. at 261, 293, 299 (upholding trial court's finding of forfeiture where the defendant engaged in litigation for 20 months before pursuing a defense of personal jurisdiction through a motion for summary judgment).  In contrast, a party who has raised a limitations defense in its answer may need to proceed further in the litigation without invoking the statute of limitations before it is appropriate for the trial court to conclude that the defense has been forfeited.  <u>See</u> <u>Bryant</u>, 816 F. Supp. 2d at 333 (concluding that limitations defense raised in answer, although not pursued in a motion for summary judgment until over eight years later, was still pressed "well in advance of trial," and therefore was not forfeited); <u>Wright</u>, 394 S.E.2d at 611 (reaching similar conclusion where defendant waited a year and a month before pursuing limitations defense in summary judgment motion).  Notwithstanding this distinction, we find the factors set forth in <u>AIIC</u> to be instructive.  <u>Cf.</u> <u>Raposo v. Evans</u>, 882 N.E.2d 356, 361-62 (Mass. App. Ct. 2008) (considering similar factors in concluding defendant forfeited affirmative defense of insufficiency of service of process).

In considering the particular circumstances of this case, along with the factors set forth above, we conclude that the trial court's determination of forfeiture was not clearly erroneous. Between the filing of the respondent's answer and his second motion to reconsider, the procedural posture of the case had changed substantially. Most importantly, the trial court had issued a post-trial decision on the merits. Furthermore, as found by the trial court, prior to pursuing his limitations defense, the respondent had actively engaged in litigation without pressing the defense, including filing substantive pretrial memoranda, participating in trial, and moving the trial court to reconsider its final order.[3] Given the circumstances of this case, we believe that the trial court did not clearly err in finding that the respondent forfeited his limitations defense.

The respondent next argues that he had no reason to further his defense beyond the filing of his answer because the petition, on its face, demonstrated a violation of the statute of limitations. Specifically, he asserts that because the petition stated that the parties' mother died on March 10, 2012, and the petition was not filed until June 8, 2016, it was clear from the face of the petition that the event on which the petitioners' personal action was based — the parties' mother's death — occurred more than three years prior to the filing of the petition. This argument is flawed, however, as the parties' mother's death was not the event on which the petitioners' claims were based. The claims against the respondent individually, which form the basis of this appeal, arose from the respondent's negotiation of the checks. And although the dates on which the checks were negotiated were alleged in the petition, at no time during the trial or in its initial motion to reconsider did the respondent alert the trial court that these dates had any significance with respect to the proper disposition of the case. In the absence of the respondent bringing this issue to the trial court's attention, the court had no duty to <u>sua</u> <u>sponte</u> dismiss the case on the grounds that the claims were barred by the statute of limitations. <u>See</u> <u>Exeter Hospital v. Hall</u>, 137 N.H. 397, 399-400 (1993) (stating that while the procedural rules do not prohibit a trial court judge from raising a limitations defense <u>sua</u> <u>sponte</u>, there is no requirement in the rules that a judge do so either).

---

[3] We also note that, under our case law, trial courts have discretion whether to consider arguments raised for the first time in a motion to reconsider. <u>See</u> <u>Smith v. Shepard</u>, 144 N.H. 262, 265 (1999) (stating that where a party raises an issue for the first time in a motion to reconsider, the trial court has the discretion "to either not consider the issue or re-open the record and allow the parties to present evidence" (quotation omitted)). While we realize that the respondent here did not raise his statute of limitations defense for the first time in his second motion to reconsider, having technically raised it in his answer, we find it noteworthy that he did not seek to establish it in any way until that time. <u>See</u> <u>id</u>. at 264 (stating that the purpose of a motion for reconsideration is to allow "a party to present points of law or fact that the [c]ourt has overlooked or misapprehended" (quotation omitted)).

The respondent alternatively argues that he timely pursued his statute of limitations defense when he advanced it in his second motion to reconsider, because it was not until after trial, when the petitioners filed their proposed factual findings, that he discovered that the petitioners had knowledge, as early as March 2013, of their possible claims against the respondent. This assertion is not supported by the record. First, it is evident from the respondent's pleading of the defense in his answer that he was at least aware of the possibility of a limitations problem at the start of the case. Second, the fact that the petitioners learned of the checks "approximately a year" after March 2012 was available to the respondent at least by the time of trial,[4] and certainly before the respondent filed his first motion to reconsider. While the respondent's initial motion to reconsider was filed on December 14, 2017, the petitioners' proposed findings of fact were submitted on September 29, 2017, and the final trial order, in which the trial court found that the petitioners discovered the checks "well over a year" after March 2012, was issued on December 4, 2017. Third, the exact date on which the petitioners learned of the checks, and more importantly, on which they learned of an injury caused by the checks, was never before the trial court because the applicability of the statute of limitations was never established by the respondent. As stated above, once the defense was pleaded in the respondent's answer, the burden to timely establish that defense rested with him, and it was not until this burden was met that the petitioners were required to produce evidence of the applicability of the discovery rule. See Beane, 160 N.H. at 712-13.

At oral argument, the respondent asked us to consider an inherent unfairness that may be present in the statute of limitations, namely that, by default, the statute of limitations allows the plaintiff, by filing an untimely claim, to put the defendant in the position of having to expend time and resources litigating a defense. The respondent urged that this scenario can be avoided by a plaintiff's compliance with the statute of limitations. We find this argument unpersuasive. As stated above, the statute of limitations is an affirmative defense that places the burden of proof on the defendant. See id. It is true, as the respondent argues, that placement of the burden on the party asserting the limitations bar may mean that a defendant seeking to rely on this defense will have to devote time and resources to establish it. The imposition of this burden is appropriate, however, given that the statute of limitations can operate to preclude what would otherwise be a meritorious claim. Furthermore, the time and resources expended in pursuing the defense most likely will pale in comparison to the effort that would be spent should the case be fully litigated through to a trial on the merits. Indeed, this is precisely why we have instructed that whether a statute of limitations defense is applicable

---

[4] Although the respondent has not furnished us with a trial transcript, he does not contend that the petitioners' request for a finding of fact that the petitioners first learned of the checks in March 2013 was not supported by the evidence presented at trial. Since the court granted the finding, we assume that it was supported by the evidence.

9

should ordinarily be determined "at a preliminary hearing in advance of trial." Sundell v. Town of New London, 119 N.H. 839, 848 (1979) (quotation omitted).

For the reasons stated above, we conclude that the trial court did not clearly err in finding that the respondent had forfeited his statute of limitations defense, and thus affirm the court's denial of the respondent's second motion for reconsideration.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.