Laconia District Court
No. 2008-160

KATHLEEN WASS

v.

CAROLYN FULLER

Submitted: January 9, 2009
Opinion Issued: January 16, 2009

Kathleen Wass, *pro se*, filed no brief.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief), for the defendant.

DALIANIS, J. The defendant, Carolyn Fuller, appeals an order of the Laconia District Court (*Huot*, J.) awarding $27,000 to the plaintiff, Kathleen Wass, for the defendant's violations of RSA 540-A:3 (2007). *See* RSA 540-A:4, IX(a) (2007). We affirm.

The following facts are reflected in the record. The plaintiff rented an apartment over a garage on property owned and occupied by the defendant. The garage was serviced by multiple propane tanks — one, controlled by the defendant, heated a portion of the garage, while the remaining tanks, controlled by the plaintiff, heated the apartment.

On Thursday, December 27, 2007, the district court, in a separate landlord-tenant case, issued a notice of judgment in the defendant's favor because of the plaintiff's nonpayment of rent. *See* RSA 540:12, :14 (2007). The notice indicated that a writ of possession would issue on January 4, 2008, unless the plaintiff filed a notice of intent to appeal. *See* RSA 540:14, I, :20 (2007). Although she filed a notice of intent to appeal on December 31, 2007, the plaintiff did not appeal. The trial court issued a writ of possession on February 22, 2008.

Before December 27, 2007, in anticipation of the eviction, the defendant requested that, during the week of December 30, 2007, the gas company fill both the tank which serviced the garage and the tanks which serviced the apartment, and place the account for the apartment in her name. The gas company, however, filled the order on December 27, and while the delivery person was on the premises, the plaintiff requested gas for the apartment.

His response, according to the plaintiff, was that he was under "strict orders to lock those tanks down." After the plaintiff protested, he called someone at the gas company, who confirmed that the defendant had ordered the tanks to be locked.

The defendant admitted that she spoke with both the delivery person and an account manager from the gas company regarding the plaintiff's request for fuel. According to the defendant, however, the tanks for the apartment were empty when the delivery person arrived on December 27, and he locked them pursuant to the gas company's policy that empty propane tanks be locked until they are tested, for a fee, to ensure their safety.

The plaintiff filed the instant petition on December 27, 2007, seeking relief pursuant to RSA 540-A:4 (2007). The district court issued a temporary order requiring the defendant to restore the gas service and provide gas to the plaintiff until the writ of possession in the landlord-tenant case was executed. See RSA 540-A:4, VIII. The defendant made arrangements to have the gas company unlock the tanks on Monday, December 31, 2007; however, on that date, she called the company again and instructed it not to unlock the tanks. Although she claimed she had placed the service back into the plaintiff's name, she never notified the plaintiff of this.

After a hearing on January 23, 2008, the trial court found that the defendant had willfully caused the utility to lock the tanks on December 27 in violation of RSA 540-A:3, I, and that this condition continued through the date of the hearing. Accordingly, the trial court awarded the plaintiff $27,000, representing $1,000 per day for the twenty-seven day duration of the condition. See RSA 540-A:4, IX(a); RSA 358-A:10, I (1995).

RSA 540-A:3, I, provides: "No landlord shall willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to . . . heat . . . [or] gas . . . , whether or not the utility service is under the control of the landlord." A violation of RSA 540-A:3, I, entitles the tenant to a separate award of actual damages or $1,000, whichever is greater, for each day that the condition continues. See RSA 540-A:4, IX(a); RSA 358-A:10, I; Simpson v. Young, 153 N.H. 471, 474-75, 478 (2006).

The defendant argues that the locking of the tanks was not willful, but was, at most, a mistake caused by the gas company's earlier-than-anticipated placement of the service in the defendant's name, the plaintiff's unanticipated filing of a notice of intent to appeal her eviction, and the plaintiff's consumption of all the fuel in the tanks. The defendant corrected the mistake, she contends, by placing the gas service back into the plaintiff's name, and, thus, there could be no statutory violation as a matter of law after December 31, 2007, when the plaintiff could resume gas service by paying the fee to unlock the tanks.

■■ We agree with the defendant that the term "willfully" in RSA 540-A:3, I, denotes a voluntary and intentional act, and not a mistaken or accidental act. *See Rood v. Moore*, 148 N.H. 378, 379 (2002). We disagree, however, that the record compelled a finding that the interruption of the plaintiff's gas service was a mistake. Although the defendant testified that the propane tanks were locked pursuant to the gas company's policy of locking an empty tank, and while she submitted proof of such a policy and that the tanks may have been empty, the plaintiff testified that the delivery person told her that he was locking the tanks pursuant to the defendant's direct order. The defendant admitted that she spoke with the delivery person and company management regarding the plaintiff's request for gas, and despite later putting the service back into the plaintiff's name, she failed to notify the plaintiff. Moreover, the defendant conceded that she later "call[ed] the gas company . . . and t[old] them not to unlock the tanks."

It was within the discretion of the trial court to credit the plaintiff's testimony over that of the defendant, as it did here. *See Cook v. Sullivan*, 149 N.H. 774, 780 (2003). Upon this record, the trial court could reasonably have found that the locking of the tanks on December 27, 2007 was no mistake, that the defendant willfully caused the utility to interrupt its service on that date, and that the condition remained until January 23, 2008. Having so found, the court was required to award $27,000 under the statute. *See Simpson*, 153 N.H. at 475.

■ To the extent the defendant argues that the plaintiff was never actually without heat because she had electric heaters, the focus of RSA chapter 540-A (2007) is "to deter unacceptable landlord conduct rather than to remedy harm to tenants." *Johnson v. Wheeler*, 146 N.H. 594, 596 (2001). Once the district court finds that a landlord has willfully violated RSA 540-A:3, the statute gives the court no discretion; it must award full statutory damages. *Carter v. Lachance*, 146 N.H. 11, 14 (2001). While this may result in a draconian penalty, we interpret legislative intent from the words of the statute considered as a whole, *Portsmouth Country Club v. Town of Greenland*, 152 N.H. 617, 620 (2005), and presume that this is the result the legislature intended. *See Simpson*, 153 N.H. at 479. Of course, if the legislature disagrees with our construction, it is free to amend the statute as it sees fit. *Marceau v. Concord Heritage Life Ins. Co.*, 149 N.H. 216, 221 (2003).

Finally, while the defendant did not comply with the trial court's temporary order requiring her to provide gas until the writ of possession was executed, that requirement, she contends, was unenforceable because it was contrary to the parties' rental agreement. RSA 540-A:4, VIII authorizes the trial court, upon the showing of an immediate threat of

irreparable harm in a petition to enforce the provisions of RSA 540-A:2 (2007) and :3, to "issue such temporary orders as it deems necessary to protect the parties." RSA 540-A:4, IX(a), by contrast, defines the civil remedies for any violations of RSA 540-A:2 and :3 that the trial court finds in resolving the petition on the merits.

Although the trial court noted that the defendant, by not affirmatively supplying the plaintiff with gas, was in violation of its temporary order, the trial court did not award damages for the defendant's contempt of the temporary order, but because it found that she had willfully caused the interruption of the plaintiff's gas service for twenty-seven days in violation of RSA 540-A:3, I. As noted above, this finding is supported by the record, and entitled the plaintiff to an award of $27,000. Accordingly, even assuming that the trial court lacked authority under RSA 540-A:4, VIII to require the defendant in the temporary order to affirmatively provide gas to the plaintiff, the purported error was harmless. *See Kessler v. Gleich*, 156 N.H. 488, 494 (2007).

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.