Rochester District Court
No. 2011-456

MYLA RANDALL

v.

NAHLA ABOUNAJA

Argued: November 27, 2012
Opinion Issued: January 11, 2013

*Emmanuel Krasner*, of Farmington, by brief and orally, for the petitioner.

*Law Office of Joshua L. Gordon*, of Concord (*Joshua L. Gordon* on the brief and orally), for the respondent.

DALIANIS, C.J. The respondent, Nahla Abounaja, appeals an order of the Rochester District Court (*Cappiello*, J.) that awarded the petitioner, Myla Randall, $18,000 in damages under RSA 540-A:4 (Supp. 2012) (amended 2011) because of the respondent's willful failure to provide heat to the petitioner's apartment for eighteen days. We affirm in part, vacate in part, and remand.

The trial court found, or the record supports, the following facts. The petitioner rented an apartment from the respondent in Rochester. At some point before March 23, 2011, the petitioner complained to the city's plumbing and health inspector that her apartment lacked heat. On March 23, the inspector came to the premises and discovered that there was no heat in the petitioner's master bedroom because neither the radiator nor the electric heater worked. The inspector called the respondent about this issue on or about March 23, and met with her on or about March 25.

On March 28, the inspector sent a letter to the respondent about this problem, giving her fourteen days to remedy it. The respondent did not respond to the letter. Nor did she return the inspector's subsequent telephone calls.

The petitioner filed the instant petition on April 12, and, on that day, the trial court issued a temporary order requiring the respondent "to immediately restore and maintain all utility services" to the petitioner's apartment.

On or about April 14, the inspector returned to the premises to meet with the parties, but left because of the marked hostility between them. The inspector observed that the petitioner's master bedroom still lacked heat that day. The inspector testified that he sent the respondent another letter on April 14, inquiring why she had not responded to the March 28 letter. The city's assistant director of code enforcement inspected the premises on April 18, and found that the heating units were operational. The director of code enforcement also came to the premises on April 20 and as well discovered that the heating units worked.

Following the hearing on the petition, the trial court found that the respondent was aware that the heating units did not work from March 28 or later, and that she failed to have them repaired until April 18. The court determined that the respondent's actions were willful because she knew that the master bedroom lacked heat but failed to have it repaired for eighteen days despite this knowledge. The trial court awarded the peti-

tioner damages in the amount of $1,000 per day for each of the eighteen days that the respondent's violation continued. *See Wass v. Fuller*, 158 N.H. 280, 283 (2009); RSA 540-A:4, IX(a) (2007) (amended 2010).

We will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. *Miller v. Slania Enters.*, 150 N.H. 655, 659 (2004); *see* RSA 540-A:4, V. Our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. *Miller*, 150 N.H. at 659. Finally, we review questions of law *de novo. Id.*

■ RSA 540-A:3, I (2007) provides: "No landlord shall willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to . . . heat . . . , whether or not the utility service is under the control of the landlord." "[T]he term 'willfully' in RSA 540-A:3, I, denotes a voluntary and intentional act, and not a mistaken or accidental act." *Wass*, 158 N.H. at 283.

In her brief, the respondent argued that her conduct was not "wil[l]ful" because she did not cause the petitioner's apartment to lack heat in the first instance. She argued that, at most, she merely "allow[ed]" the heating service to be interrupted; she did not "cause" the interruption itself. Her merely "negligent omission," she argued, did not constitute a willful act.

However, at oral argument, when questioned about whether she had ever raised this statutory argument in the trial court, the respondent clarified her position. She conceded that a landlord's willful failure to correct a condition "at some point . . . it rises to willful interruption." Her counsel argued that the respondent did not act "willfully," however, because she was "just idly unaware of the problem." Later, her counsel explained:

> [Court]: Now, you acknowledged at the outset of your argument that at some point there's a line where inaction becomes willfulness, is that right?
>
> [Counsel]: I think that's built into the statute because the . . . penalties accrue daily. So, in effect, every day is another violation. So, I think that there's no choice but to read it as day by day, y'know, today you might be mistaken, but tomorrow, if you ignore the problem, . . . yes, the answer to your question is yes.
>
> [Court]: . . . In essence, didn't the trial court make a determination that, yes, this time it went . . . past the line?
>
> [Counsel]: Yes, I think that's what the trial court did, but the facts aren't on the record to support the finding. They're just not

there. . . . The tenant . . . never notified the [landlord]. The heat worked every time. . . . I think this is sufficiency of the evidence.

■ In light of the respondent's clarification at oral argument, we assume, without deciding, that a landlord's willful failure to repair a tenant's utility service constitutes "willful interruption" of that service. RSA 540-A:3, I. We limit our review to whether there was evidence in the record to support the trial court's findings that the respondent was aware that the heating units in the petitioner's apartment did not work and that she willfully did not repair them, despite this knowledge.

There is ample evidence to support the trial court's finding that the respondent was aware that the heating units in the petitioner's apartment did not work. The petitioner's brother testified that he had been living with the petitioner in the apartment since January 2011, and that while living there, he observed that the heating units worked only intermittently. The brother testified that the petitioner called the respondent about this issue on numerous occasions and that she finally notified the city of her concerns because the respondent had failed to fix the problem. The record also includes the March 28 letter specifically notifying the respondent that the heating units did not work.

The record also supports the trial court's finding that the landlord did not repair the units until April 18 despite knowing that they did not work. The record includes a May 14 letter from an electrician stating that he was not called until April 8 to repair the heating units, and that he did not respond to the call until April 18. Thus, despite knowing at least from the inspector's March 28 letter that the heating units needed repair, the landlord offered no evidence that she called an electrician until eleven days later. The electrician did nothing for another ten days.

Based upon all of the above evidence, the trial court reasonably found that the respondent knew that the heating units in the petitioner's master bedroom did not work and that, despite this knowledge, she did not have them repaired for at least eighteen days. Based upon these findings, the trial court reasonably determined that the respondent's failure to have the units repaired was intentional, and, therefore, willful. *See Wass*, 158 N.H. at 283. We, therefore, uphold the trial court's conclusion that the respondent's conduct willfully violated RSA 540-A:3, I.

We next address the proper measure of damages. Under the version of RSA 540-A:4, IX(a) in effect when the events giving rise to this appeal occurred, a violation of RSA 540-A:3, I, entitled the petitioner to "the civil remedies set forth in RSA 358-A:10 for the initial violation, including costs and reasonable attorney's fees incurred in the proceedings." RSA 540-A:4, IX(a) (Supp. 2012). RSA 358-A:10 (2009) provides for recovery "in the

amount of actual damages or $1,000, whichever is greater." Because we have upheld the trial court's finding that the respondent willfully violated RSA 540-A:3, I, we also uphold its determination that the petitioner was entitled to damages of $1,000 for that initial violation.

RSA 540-A:4, IX(a) also entitled the petitioner to damages for "[e]ach day" that the respondent's violation continued *"after issuance of a temporary order."* RSA 540-A:4, IX(a) (emphasis added); *see Wass,* 158 N.H. at 283. The temporary order in this case was issued on April 12, 2011. Nonetheless, the trial court awarded the petitioner $1,000 per day for some days that the respondent's violation of RSA 540-A:3, I, continued *before* April 12. In so doing, the trial court contravened the plain meaning of RSA 540-A:4, IX(a) and committed plain error. *See* SUP. CT. R. 16-A.

■ The plain error rule allows us to exercise our discretion to correct errors that were raised neither in the trial court nor on appeal. *Id.* To find plain error: "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *In the Matter of Brownell & Brownell,* 163 N.H. 593, 602 (2012) (quotation omitted). The rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.*

The petitioner contests only the fourth prong of the plain error test. In light of her apparent concession that the other prongs of the plain error test have been met, we limit our analysis to the fourth prong of that test. "Under the fourth prong, we must decide whether the trial court's error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Russell,* 159 N.H. 475, 491 (2009) (quotation and brackets omitted). We apply the fourth prong "on a case-specific and fact-intensive basis." *Id.* (quotation omitted).

■ Under this case-by-case approach, we conclude that the error in this case warrants the exercise of our discretion to correct it. The trial court's damage award was contrary to the express language of the pertinent statute. The statute plainly allows a trial court to award damages of $1,000 per day for each day that a violation continues *after* the court has issued a temporary order. The statute does not authorize a trial court to award continuing violation damages for any days *before* it has issued a temporary order. The damages award in this case, therefore, cannot stand. *See State v. Taylor,* 152 N.H. 719, 721 (2005) (fourth prong of plain error test satisfied because sentence imposed by trial court was illegal in that it violated pertinent statute).

The petitioner argues that the trial court's error does not satisfy the fourth prong because the respondent did not bring the error to the trial

court's attention. She contends: "The failure of [the respondent's] representatives to raise this issue does not support an allegation that the proceedings in the [trial] [c]ourt were unfair." As she explains: "A judicial proceeding in which an experienced [respondent] and two experienced legal counsel did not perceive an error by the [trial] [c]ourt, is not one where the process can be considered 'unfair'."

■ In effect, the petitioner argues that because the respondent failed to preserve the trial court's error for our review, the error cannot "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at 720. We disagree. The plain error rule grants us the discretion to correct trial court errors despite an appellant's failure to preserve them for our review, or even to argue them on appeal.

Additionally, the petitioner argues that we should not exercise our discretion to correct the trial court's error in this case because "the result is not a miscarriage of justice." We disagree. As a result of the trial court's error, the respondent was required to pay $18,000, even though the damage award should have been thousands of dollars less.

Because the trial court committed plain error when it awarded the petitioner $1,000 per day for at least some days that the respondent's violation of RSA 540-A:3, I, continued before April 12, we vacate $17,000 of the damage award and remand for further proceedings consistent with this opinion. On remand, the trial court shall determine whether the respondent willfully violated RSA 540-A:3, I, after April 12, and, if so, the court shall award the petitioner $1,000 per day for each day that the respondent's violation continued. If the court finds that the respondent did not willfully violate RSA 540-A:3, I, after April 12, the court shall not award the petitioner any continuing violation damages.

We have reviewed the parties' remaining arguments and conclude that they do not warrant any extended consideration. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed in part; vacated in part; and remanded.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.