NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court–Hillsborough District Division
No. 2018-0141


JACQUELINE LANE

v.

ANTONIO BARLETTA

Argued:  September 18, 2019
Opinion Issued:  November 22, 2019


Law Office of Kyle McDonald Esq., P.L.L.C., of Concord (Kyle McDonald on the brief and orally), for the plaintiff.


Courteous Law, PC, of Henniker (Deb Bess Urbaitis on the brief and orally), for the defendant.


HICKS, J.  The defendant, Antonio Barletta, appeals an order of the Circuit Court (Tenney, J.) awarding the plaintiff, Jacquelyn Lane, $66,000 in damages for the defendant's willful interruption of the plaintiff's heat utility service in violation of RSA 540-A:3, I (2007), for a period of thirty-three days. The plaintiff cross-appeals the trial court's denial of her motion for reconsideration.

On appeal the defendant argues that the trial court erred in finding that he caused a "willful interruption" of the plaintiff's heating service in violation of

RSA 540-A:3, I. Alternatively, he argues that even if he did violate RSA 540-A:3, I, the trial court erred in awarding enhanced damages pursuant to RSA 540-A:4, IX(a) (Supp. 2018) and RSA 358-A:10, I (2009). Finally, the plaintiff cross-appeals the trial court's denial of her motion for reconsideration as untimely. We vacate the order of the trial court and remand for further proceedings.

The record supports the following facts. The plaintiff moved into an apartment in Henniker that she rented from the defendant at the end of August 2016. A short time thereafter the plaintiff and her grandfather noticed that the heating system maintained a pilot light but did not produce heat. The plaintiff notified the defendant of the problem via text message on September 26, 2016, and was told to call the maintenance person for the property. When the maintenance person arrived, he turned on the heating system and observed the pilot light, and instructed the plaintiff to leave the system on for a while. He told the plaintiff that if she did not begin to feel any heat to contact the defendant.

The heating problems persisted, and when the plaintiff so informed the defendant, he told her that he would send over a space heater and repair or replace the heating system. The plaintiff received the space heater in November 2016, and, in December, she informed the defendant that the space heater "[wa]sn't cutting it." However, the space heater remained her only source of heat. In August 2017, the plaintiff called the Henniker health inspector hoping that a letter from that office might prompt the defendant to take action. Nevertheless, the heating system was not repaired.

On November 3, 2017, the plaintiff filed a petition for a temporary order and a hearing pursuant to RSA chapter 540-A. That same day, the trial court issued a temporary order requiring the defendant to immediately restore heat to the plaintiff's apartment and scheduled a hearing for December 1, 2017. On the day of the hearing, the heating system still had not been fixed and the space heater remained the plaintiff's only source of heat. By that time, the defendant had arranged for a representative from AGS Services, Inc. to inspect the heating system and confirm that there was no propane in the tank. At the hearing, the defendant testified that he "didn't find [the plaintiff's] complaint relevant because [he] knew that the unit worked." His position was that the heating system had always worked and that it merely lacked propane, which the plaintiff was responsible for supplying. Although the defendant recognized that the ignition of the pilot light suggested the presence of propane, his basis for making the assertion was that another tenant, who had occupied the apartment prior to the plaintiff, never notified him that the heat was not working. Because neither party presented any evidence as to whether the heating system was in working order and would heat the apartment if there

2

were propane in the tank, the trial court continued the hearing so that evidence bearing on that central issue could be presented.

The defendant had the heating system's propane tank filled on December 6, 2017, in anticipation of technicians coming to inspect the system. Subsequently, the plaintiff and defendant each had a separate technician inspect the heating system. The plaintiff hired a technician from Space Kraft LLC to inspect the system on December 20. Her technician concluded that he could not test for heat because the gas line was not up to code, and that the unit should be replaced because of its age. The defendant hired a technician from AGS Services, Inc. to inspect the system on December 21. His technician was not able to turn the heating system on and ultimately concluded that the unit was in need of repair. The plaintiff moved out of the apartment on January 1, 2018, while the heating system was still inoperable.

In the trial court's final order, notice of which went out on February 22, the court found that the defendant violated RSA 540-A:3, I, for a period of thirty-three days, beginning when the temporary order was issued on November 3, 2017, and ending on December 6, 2017. Further, the trial court found that, because the defendant violated RSA 540-A:3, I, the plaintiff was entitled, at a minimum, to double damages under RSA 540-A:4, IX(a) and RSA 358-A:10, I. Assessing the damages at $1,000 per day and then doubling those damages, the court awarded damages of $2,000 per day for thirty-three days, for a total damages award of $66,000. On March 5, 2018, the plaintiff filed a motion asking the court to reconsider the date upon which it stopped calculating damages. The court denied the plaintiff's motion as untimely under District Division Rule 5.10,[1] which requires post-trial motions to be filed within seven days after the date of the clerk's notice of judgment. This appeal followed.

In reviewing the questions presented by this appeal, we will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. Randall v. Abounaja, 164 N.H. 506, 508 (2013); see RSA 540-A:4, V (2007). Our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. Randall, 164 N.H. at 508. Finally, we review questions of law de novo. Id.

First, we address whether the defendant "willfully interrupted" the plaintiff's heating service in violation of RSA 540-A:3, I. That statute provides, in pertinent part, that "[n]o landlord shall willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the

---

[1] Although the trial court did not explicitly state what rule it was applying, the parties appear to agree that the court applied Rule 5.10.

tenant including, but not limited to . . . heat . . . , whether or not the utility service is under the control of the landlord." RSA 540-A:3, I.

This court has acknowledged that "[w]illful is a word of many meanings depending upon the context in which it is used." Appeal of Morgan, 144 N.H. 44, 52 (1999) (quotation omitted). "The term 'willfully' in RSA 540-A:3, I, denotes a voluntary and intentional act, and not a mistake or accidental act." Randall, 164 N.H. at 508 (quotation and brackets omitted).

Randall involved facts strikingly similar to those now before us. In that case, a landlord failed to repair a tenant's heating system after being put on notice of it not working. Id. at 507. We assumed, without deciding, that a landlord's willful failure to repair a tenant's utility service constitutes "willful interruption" in light of concessions made by counsel at oral argument. Id. at 509. Accordingly, we limited our review to "whether there was evidence in the record to support the trial court's findings that the [landlord] was aware that the heating units in the petitioner's apartment did not work and that she willfully did not repair them, despite this knowledge." Id.

The landlord in that case argued that her conduct was not "willful" because she had not done anything to cause the tenant's apartment to lack heat, but had merely allowed the heating service to be interrupted by "negligent omission," which did not constitute a willful act. Id. at 508. By contrast, the tenant offered evidence that she had informed the landlord multiple times that the heat was not working, that she had called the city inspector when nothing was done by the landlord, and that the landlord received a letter from the city inspector stating that the heating unit needed to be repaired. Id. at 509. From that evidence, we held that "the trial court reasonably determined that the respondent's failure to have the units repaired was intentional, and, therefore, willful." Id.

We reached a similar result in Wass v. Fuller, 158 N.H. 280 (2009), which involved a landlord who ordered the gas company to lock the gas tanks to the plaintiff's apartment in anticipation of, but prior to, evicting the plaintiff, thereby interrupting her heat utility service. Wass, 158 N.H. at 281-82. The landlord argued that locking the gas tanks was not a willful interruption of heat, but was rather a mistake caused by the gas company having placed the utility in the landlord's name earlier than anticipated and by the plaintiff's unexpected notice of intent to appeal her eviction. Id. at 282. We rejected the landlord's argument that the record compelled a finding of mistaken or accidental action because there was evidence to support the facts that she ordered the gas company to lock the tanks and did not notify the plaintiff when the utility was put back in the plaintiff's name. Id. at 283. In addition, we stated that "[i]t was within the discretion of the trial court to credit the plaintiff's testimony over that of the defendant." Id.

4

By contrast, in Rood v. Moore, 148 N.H. 378 (2002), we affirmed the trial court's decision that RSA 540-A:2 was not willfully violated when a landlord made a single unauthorized entry into the tenant's apartment for the purpose of allowing carpet installers to measure the premises. Rood, 148 N.H. at 378. There, the trial court found that the landlord reasonably and innocently misunderstood the extent of his right to enter the premises. Id. Specifically, we held that "RSA 540-A:2 was not intended to impose liability upon a landlord who enters a tenant's premises under an honestly mistaken understanding of the tenant's consent to such entry." Id. at 379.

Turning to the case now before us, we are presented with a situation closer to that of Randall than that of Rood. The plaintiff in this action first notified the defendant that her apartment was without heat on September 26, 2016. Between then and the time she filed a chapter 540-A petition on November 3, 2017, the plaintiff had been in contact with the defendant's maintenance person for the property, the Henniker health inspector, and, on multiple occasions, the defendant himself regarding the issue. Nevertheless, the defendant "didn't find [the plaintiff's] complaint relevant because [he] knew that the unit worked," notwithstanding the fact that his belief was based solely and entirely on the apartment's prior tenant never notifying him otherwise.

Throughout this entire episode the defendant has maintained that the heating system worked and just needed propane in the tank, which the plaintiff was responsible for filling. The plaintiff, on the other hand, has maintained that the heating system was inoperable and would not heat the apartment regardless of how much propane was in the tank. Ultimately, it was confirmed by a technician that the propane tank was in fact empty, and two other technicians later concluded that the heating system was not up to code, in need of repair, and inoperable, regardless of the propane supply.

The temporary order issued by the trial court on November 3, 2017 required the defendant to restore heat in the plaintiff's apartment immediately. RSA 540-A:3, I, prohibits a landlord from "willfully caus[ing], directly or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to . . . heat . . . , whether or not the utility service is under the control of the landlord." RSA 540-A:3, I (emphasis added). The plain language of the statute contemplates its violation by willful action as well as willful inaction by employing the terms "directly or indirectly." Id. The defendant may not have willfully caused the interruption of the plaintiff's heat directly, as did the landlord in Wass who locked the tenant's gas tank. See Wass, 158 N.H. at 283. However, like the landlord in Randall, the defendant may have willfully caused the interruption indirectly by failing to repair the heating system after being put on notice that it was broken and being ordered by the court to fix it. See Randall, 164 N.H. at 509.

5

In Randall, we left open the question whether a landlord's willful failure to repair may constitute a "willful interruption" of a utility service under RSA 540-A:3. Randall, 164 N.H. at 509. Because this issue may come up again on remand, we take this opportunity to answer that question affirmatively, and hold that a landlord's willful failure to repair a tenant's utility service after being put on notice of the defect in service is sufficient to constitute a "willful interruption" of that service under RSA 540-A:3, I.

However, that is not the end of our "willful interruption" analysis in this case. The defendant also argues that he did not "willfully interrupt" the plaintiff's heating service because he provided the plaintiff with a space heater, which, he contends, is an adequate alternative source of heat. The defendant was denied the opportunity to submit evidence to the trial court in support of that argument because the trial court was operating under the belief that a space heater, as a matter of law, is not an adequate heat source in a New Hampshire tenancy. Similarly, in responding to this argument, the plaintiff relies on Wass to support the proposition that a space heater cannot be an adequate alternative heat source. Wass does not stand for that proposition. Rather, Wass establishes that a plaintiff is entitled to damages for a landlord's violation of RSA chapter 540-A regardless of whether the plaintiff suffered actual damages because the focus of that statute is "to deter unacceptable landlord conduct rather than to remedy harm to tenants." Wass, 158 N.H. at 283. In that case, the landlord's argument was that, despite her willful interruption of the plaintiff's heat, her statutory violation should be excused because the plaintiff did not suffer actual damages, since she did not go without heat because of the electric heaters she had. Id. Here, the defendant's argument is that, despite his failure to repair the plaintiff's original heat source, he did not willfully interrupt the plaintiff's heat in violation of the statute because he provided an adequate alternative heat source when he found out the original one was broken. Thus, the plaintiff's reliance on Wass in this case was misplaced.

The plaintiff also maintains that a space heater is not an adequate source of heat pursuant to RSA 48-A:14, XI (2012), which sets forth the minimum standards for providing heat in municipalities that have not adopted ordinances, codes, or bylaws pursuant to that chapter. See RSA 48-A:14 (Supp. 2018). However, the adequacy of the space heater was not considered by the trial court in the first instance as it should have been, and therefore that issue is not properly before us. See State v. Batista-Salva, 171 N.H. 818, 822 (2019).

Although the defendant willfully failed to repair the plaintiff's original heat source, he may not have willfully interrupted the plaintiff's heat in violation of RSA 540-A:3, I, if the space heater he provided was an adequate

6

alternative source of heat.  Therefore, we vacate the trial court's finding of a statutory violation and remand.

Having vacated the trial court's finding of a statutory violation, the damages award resulting from that violation is vacated as well.  Thus, we address the arguments regarding enhanced damages no further than to reiterate what we have held in a prior case: that a violation of RSA chapter 540-A does not, as a matter of law, entitle a plaintiff to enhanced damages under RSA 358-A:10.  Simpson v. Young, 153 N.H. 471, 476 (2006).  To be entitled to enhanced damages under the Consumer Protection Act, RSA 358-A:10 unambiguously requires a "willful or knowing" violation of that chapter.  Id.

Finally, because we have vacated the trial court's finding of a statutory violation and award of damages, the plaintiff's argument that the trial court erred in denying her motion for reconsideration has become moot.  We vacate the trial court's finding of a violation of RSA 540-A:3, I, as well as the damages awarded therefrom, and remand for further proceedings consistent with this opinion.

Vacated and remanded.


BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7