Durham District Court
No. 2003-191

JOSEPH MILLER

v.

SLANIA ENTERPRISES, INC.

Argued: February 5, 2004
Opinion Issued: March 15, 2004

*Joanne M. Stella*, of Durham, by brief and orally, for the plaintiff.

*Lynne C. Christie*, of Durham, by brief and orally, for the defendant.

*New Hampshire Legal Assistance*, of Manchester (*Elliott Berry* on the brief), for The Way Home, as *amicus curiae*.

BRODERICK, C.J. The defendant, Slania Enterprises, Inc. (landlord), appeals a decision of the Durham District Court (*Larson*, J.) awarding damages to the plaintiff, Joseph Miller, as a result of an illegal eviction. We affirm.

The record supports the following facts. The landlord entered into a lease agreement with the plaintiff and others (tenants) for an apartment in Durham. The lease ran from June 2001 until May 25, 2002, and called for monthly rent of $2,000. The tenants failed to pay the total rent due for April 2002 on time. The landlord brought an eviction action for nonpayment of rent, which resulted in the issuance of a default judgment and writ of possession on April 19, 2002.

On April 25, 2002, the plaintiff and a fellow tenant met with Tom Christie, the landlord's representative. They verbally agreed that the plaintiff would pay the April rent arrearage and the May rent, and in return, the tenants would be allowed to stay in the apartment until May 25, 2002. The plaintiff gave Christie a check for $3,200 to pay the April arrearage and the May rent, which Christie accepted and later deposited in the bank. The check cleared the plaintiff's bank in Illinois on April 29, 2002.

After the meeting on April 25, the tenants held a party in their apartment. The landlord believed that the party violated the terms of the prior lease agreement, and thus violated the terms of the verbal agreement reached on April 25. The landlord instructed the sheriff to execute the writ of possession. On April 29, the sheriff posted a notice on the tenants' apartment door advising them that they had forty-eight hours to move. The tenants completed moving out of the apartment on May 1.

On May 31, the landlord issued a letter to the tenants itemizing a number of charges the landlord was making against the tenants' $2,000 security deposit. Because the charges exceeded $2,000, no part of the tenants' security deposit was returned to them.

The plaintiff sued for breach of the covenant of quiet enjoyment, violation of the Consumer Protection Act, improper security deposit deductions, and unjust enrichment. The landlord counterclaimed for damages in excess of the security deposit, or alternatively for all of its damages under contract law. During the trial, the plaintiff cross-examined

Christie, without objection, regarding his knowledge of the provisions of RSA 540:13, VII (Supp. 2003), which permits a landlord under certain circumstances to accept payment of rental arrearages without creating a new tenancy. At the conclusion of the trial, plaintiff's counsel asked the court to review RSA 540:13, VII, arguing:

> If they [the landlord] accept payment during the pendency of a possessory action, that they're supposed to inform the tenant, in writing, that they're gonna go forward with the eviction.

No objection was made at trial to this argument. The court gave the landlord ten days following the end of the trial in which to file a memorandum of law.

In its post-trial memorandum of law, the landlord noted: "At trial, though not [pled], Plaintiff seemed to argue that Landlord had created a new tenancy under RSA 540-A:13(VII) [sic] by not giving written notice of proceeding with the eviction after Joe Miller paid the April rent arrearage and the May rent in advance." The landlord then set forth its legal arguments on the merits. It again did not object to the court's consideration of this issue, nor contend that the timing and manner in which the issue had been raised at trial either deprived it of the opportunity to present evidence or otherwise prejudiced it in any way.

The trial court ruled that the landlord's acceptance of the $3,200 tendered by the plaintiff on April 25, absent any written notice of the landlord's intention to proceed with the eviction process, created a new tenancy. The court found that no evidence was introduced by either party as to the terms of the new tenancy, and ruled that it was a tenancy at will. The court further ruled that the eviction violated RSA 540:13, VII because the writ of possession that was executed had been issued on the old tenancy, but a new tenancy had thereafter been created. The court awarded damages in the amount of $1,000 for the unlawful eviction, as well as attorney's fees of $600.

The court also ruled that improper security deposit deductions were claimed by the landlord, and awarded $1,353.72 to the plaintiff. Although the court further ruled that the landlord's May 31, 2002 itemization of charges had been untimely, the court did not award any damages because of the late notice.

Finally, the court ruled that the landlord had been unjustly enriched due to its retention of the $2,000 rent for May, since the landlord had unlawfully denied the tenants occupancy of the apartment during that month, and awarded the plaintiff damages in that amount.

The landlord moved for reconsideration, arguing for the first time that it had been surprised at trial by the plaintiff's argument that the landlord had created a new tenancy under RSA 540:13, VII. The motion for reconsideration was denied.

On appeal, the landlord argues, among other things, that the trial court erred by: (1) awarding damages under a theory not pled by the plaintiff; (2) ruling that RSA 540:13, VII applied and that a new tenancy was created; (3) finding sufficient evidence that the landlord willfully circumvented the lawful procedures for eviction; (4) ruling that the May 31, 2002 security deposit notice was untimely; (5) ruling that a "savings clause" in the lease agreement was invalid; and (6) ruling that the thirty-day time limit in RSA 540-A:7 (1997) acts as a statute of limitations for all separate actions for damages.

> We will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. Legal conclusions, as well as the application of law to fact, are reviewed independently for plain error. Accordingly, our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. Finally, we review questions of law *de novo*.

*Sherryland v. Snuffer*, 150 N.H. 262, 265 (2003) (citations omitted); *see also* RSA 540-A:4, V (1997).

■ The landlord first argues that the trial court erred by awarding damages under a theory not pled by the plaintiff. The landlord contends that the court erroneously allowed the plaintiff to constructively amend his pleadings to allege a violation of RSA 540:13, VII. *See* RSA 514:9 (1997). The landlord did not object either to the introduction of evidence related to the landlord's compliance with RSA 540:13, VII, or to the plaintiff's arguments at the close of the evidence addressing the same issue. The landlord was then allowed to file a post-trial memorandum of law in which it again raised no objection and instead addressed the issue on the merits. *Cf. Penrich, Inc. v. Sullivan*, 140 N.H. 583, 590 (1995) (issues should be raised at earliest possible time before trial court). Furthermore, neither below nor on appeal has the landlord identified any evidence that it was precluded from introducing; nor has it otherwise demonstrated any unfair prejudice resulting from the court's consideration of this issue. Accordingly, we find no reversible error. *Cf. Kravitz v. Beech Hill Hosp.*, 148 N.H. 383, 393 (2002) (holding that trial court erred by allowing

amendment of pleadings when proposed amendment introduced new cause of action not referred to by either party during trial).

The landlord next challenges the trial court's rulings that RSA 540:13, VII applied and that a new tenancy was created when the landlord accepted payment of $3,200 on April 25. RSA 540:13, VII provides:

> In the case of nonpayment of rent, while the possessory action is pending, the landlord may accept payment of the rental arrearage without creating a new tenancy, provided that the landlord informs the tenant in writing of the landlord's intention to proceed with the eviction in spite of the landlord's acceptance of the payment. The landlord may choose not to accept payment and to proceed with the eviction.

The landlord argues that the possessory action was no longer "pending" on April 25 because the district court entered final judgment and issued a writ of possession prior to that date. Therefore, the landlord contends, the statute does not apply.

On its face, RSA 540:13, VII does not affirmatively provide for the creation of a new tenancy upon acceptance of a rental arrearage. Rather, it appears to assume that a new tenancy may be created under such circumstances. The statute affirmatively creates a safe harbor for landlords, providing a method by which they may accept rental arrearages from tenants without thereby creating a new tenancy, while ensuring that a tenant who makes such a payment does so with notice that the payment will not stop the eviction proceeding. Furthermore, RSA 540:13, VII on its face addresses the acceptance of rental arrearages, not the payment of future rent.

■ We need not decide, however, whether RSA 540:13, VII would have allowed the landlord to accept the rental arrearage and future rent on April 25 without creating a new tenancy because it is undisputed that the landlord did not provide the plaintiff with written notice of its intention to proceed with the eviction in spite of the payment.

■ Nor need we decide whether RSA 540:13, VII creates, by negative implication, a new tenancy when a landlord accepts a rental arrearage while a possessory action is pending without providing the statutory written notice to the tenant. At oral argument, landlord's counsel agreed that if we were to conclude that the statute does not apply, it would still be necessary to determine whether a new tenancy was otherwise created. When asked whether we should remand the case to the district court for such a determination, landlord's counsel requested that we decide whether

a new tenancy had been created. Because the relevant facts before us are undisputed, we accept the invitation. We conclude that in this case, regardless of whether RSA 540:13, VII applies, a new or renewed tenancy was created that required the landlord to again comply with the procedures in RSA chapter 540 to evict the tenants.

There is no dispute that the original tenancy was terminated, and that the writ of possession was issued to the landlord. On April 25, however, the parties entered into a new agreement—the plaintiff tendered a check that included payment of the May rent and the parties agreed that the tenants would be allowed to stay in the apartment until May 25. The landlord deposited the check in its bank account. It is undisputed that the landlord did not inform the tenants either orally or in writing that he intended to enforce the writ of possession despite the payment. Thus, the parties created either a new or renewed tenancy. *See* RSA 540-A:1 (1997) (defining "landlord" and "tenant"); *cf. Corcoran Management Co., Inc. v. Withers*, 513 N.E.2d 218, 222-23 (Mass. App. Ct. 1987) (general rule is that after effective date of valid notice to terminate tenancy, payment of rent in advance for period after termination of tenancy, and acceptance by landlord thereof, is *prima facie* evidence of waiver of right to recover possession absent new notice).

The landlord argues that the parties agreed that the terms of the prior lease would continue to apply, and that the tenants understood that if they violated the terms of the prior lease, "they would be out." The landlord contends that the tenants violated the lease terms by holding a party on the evening of April 25, thus justifying the subsequent eviction.

 The trial court ruled that a tenancy at will was created on April 25. *See* RSA 540:1 (1997). Even if we assume, however, that the new tenancy incorporated the terms of the prior lease and that the tenants violated that agreement by holding a party on the evening of April 25, the landlord was not authorized to utilize the writ of possession issued for nonpayment of rent to evict the tenants for this new violation of their agreement. *But cf.* RSA 540:13-c, II (1997) (parties not prohibited from agreeing, in nonpayment of rent case, that in spite of judgment for landlord, writ of possession shall not be issued if tenant makes agreed-upon payments, and if payments not made, landlord may request issuance of writ). The landlord is prohibited from attempting to circumvent the lawful procedures for eviction pursuant to RSA chapter 540. *See* RSA 540-A:2 (1997). No lease or rental agreement, oral or written, may contain any provision by which a tenant waives any of his or her rights under RSA chapter 540, and any such waiver is null and void. *See* RSA 540:28 (1997).

Thus, even if the landlord is correct that the agreement reached on April 25 specifically provided that the landlord could evict the tenants for violating the lease terms without again following the procedures set forth in RSA chapter 540, that provision would have been null and void with respect to the violations alleged here. *See Havington v. Glover*, 143 N.H. 291, 293-94 (1998). We therefore agree with the district court that the eviction was unlawful.

The landlord next argues that the court erred in finding that it violated RSA 540-A:2 or RSA 540-A:3 because the evidence does not support a finding that it acted "willfully." We disagree.

RSA 540-A:2 provides in pertinent part: "No landlord shall willfully violate a tenant's right to quiet enjoyment of his tenancy or attempt to circumvent lawful procedures for eviction pursuant to RSA 540." RSA 540-A:3, II (1997) prohibits a landlord from "willfully" seizing or otherwise denying a tenant access to and possession of the tenant's rented or leased premises, other than through proper judicial process. In *Rood v. Moore*, 148 N.H. 378, 379 (2002), we noted that although "willful" is a word of many meanings depending upon the context, we have usually interpreted it to exclude an act committed under a mistaken belief of the operative facts. "A willful act is a voluntary act committed with an intent to cause its results. It is not, by contrast, an accident or an act committed on the basis of a mistake of fact." *Rood*, 148 N.H. at 379 (quotation omitted). Accordingly, we held that a landlord who entered a tenant's premises under an honestly mistaken understanding of the tenant's consent to such entry did not violate RSA 540-A:2. *Id.*

Here, the trial court found no mistake of fact, such as was found in *Rood*, on the part of the landlord. The landlord's conduct was in clear violation of RSA 540-A:3, II. As a landlord, the landlord is charged with knowledge of the statute. *See Johnson v. Wheeler*, 146 N.H. 594, 597 (2001). We conclude that the evidence supports a finding that the landlord acted willfully.

The landlord next contends that the trial court erred by ruling that the May 31, 2002 security deposit damage letter was untimely. *See* RSA 540-A:7, I (1997) (providing thirty days for landlord to return security deposit). As the plaintiff correctly notes, the trial court did not award any damages for this alleged violation. *See* RSA 540-A:8, I (1997). Accordingly, even assuming that the trial court erred, the error was harmless.

Finally, the landlord argues that the trial court erred by ruling that a "savings clause" in the original lease agreement was invalid, and that the

thirty-day time limit in RSA 540-A:7 acts as a statute of limitations for all separate actions for damages.

We begin by noting that we have not been provided with a copy of the landlord's counterclaim or the May 31 security deposit letter and attachments. *See* SUP. CT. R. 13(3) (amended 2003) (moving party responsible for providing sufficient record on appeal). The only damages discussed in detail in the relevant portions of the landlord's brief are its "claim in damages for the $2000 collected for rent May 2002." In light of the record provided to us, we shall limit our review to that claim.

The "savings clause" in the original lease states:

> After the Leased Premises are vacated, the obligations of the Lease Agreement continue until either the lease term expires or the Leased Premises are re-let. If the Leased Premises are re-let, Tenant shall be reimbursed for any advance rental payments, less any arrears and reasonable expenses incurred by Landlord to re-let the Leased Premises, including without limitation $75.00 for each new lease preparation.

The landlord argues that under this provision, the tenants "would be responsible for liability after eviction until the end of the term, unless the premises were re-let." The landlord further contends that its claim under this "savings clause" for the May rent of $2,000 is not subject to a thirty-day statute of limitations under RSA 540-A:7.

We disagree with the landlord's reading of the trial court's order. We do not understand the trial court to have ruled either that the original lease provision was invalid or that the landlord's claim under that provision for the May rent was barred by any statute of limitations. Rather, as the trial court correctly found, the landlord was paid $2,000 as rent for the month of May under the new tenancy created on April 25. In other words, after the original tenancy under the lease had terminated, the landlord did re-let the premises on April 25. It received $3,200, an amount equal to the total amount of rent that the tenants would have owed under the original lease through its expiration date. Because the premises were in fact re-let and the landlord received an amount equal to the full rent to which it would have been entitled under the original lease, the landlord was not entitled to an award of damages under the "savings clause" or general contract law for the May rent of $2,000.

After the landlord received the check for $3,200 on April 25, it caused the unlawful eviction of the tenants on May 1, denying them occupancy of the apartment for which they had paid. The trial court concluded that

allowing the landlord to retain the $2,000 rent for May would constitute unjust enrichment. The landlord's only challenges to this ruling are based upon the arguments that we have rejected above. Accordingly, we do not disturb this ruling.

The remaining issues raised by the landlord either are without merit or need not be addressed in light of our rulings above. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

NADEAU, DALIANIS and DUGGAN, JJ., concurred.