# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2015-0235, <u>Leah Ducey v. Joan Iannazzo</u>, the court on December 4, 2015, issued the following order:**

Having considered the brief and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Joan Iannazzo (landlord), appeals an order of the Circuit Court (<u>Stephen</u>, J.) in favor of the plaintiff, Leah Ducey (tenant). She contends that the trial court erred by finding that she willfully violated the tenant's right to quiet enjoyment of the apartment that the tenant rented from her. <u>See</u> RSA 540-A:2 (2007).

RSA 540-A:2 provides that "[n]o landlord shall willfully violate a tenant's right to quiet enjoyment of his tenancy or attempt to circumvent lawful procedures for eviction pursuant to RSA 540." RSA 540–A:2 does not further define a tenant's right to quiet enjoyment; however, we rely upon the common law doctrine that the covenant obligates the landlord to refrain from interference with the tenant's possession during the tenancy. <u>Adams v. Woodlands of Nashua</u>, 151 N.H. 640, 641 (2005).

A breach of the covenant of quiet enjoyment occurs when the landlord substantially interferes with the tenant's beneficial use or enjoyment of the premises. <u>Echo Consulting Services v. North Conway Bank</u>, 140 N.H. 566, 571 (1995). Even if not substantial enough to rise to the level of a constructive eviction, such interference may constitute a breach of the covenant of quiet enjoyment entitling the tenant to damages. <u>Id</u>. Conversely, a tenant's right to quiet enjoyment is not violated when the tenant fails to demonstrate that the tenant lost the use of the premises. <u>See</u> <u>Adams</u>, 151 N.H. at 642; <u>Crowley v. Frazier</u>, 147 N.H. 387, 390 (2001).

We will not disturb the findings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. <u>Miller v. Slania Enters.</u>, 150 N.H. 655, 659 (2004). Legal conclusions, as well as the application of law to fact, are reviewed independently for plain error. <u>Id</u>. Accordingly, our inquiry is to determine whether the evidence presented to the trial court reasonably supports its findings, and then whether the court's decision is consonant with applicable law. <u>Id</u>. Finally, we review questions of law <u>de</u> <u>novo</u>. <u>Id</u>.

In this case, the trial court awarded the tenant statutory damages for four days pursuant to RSA 540-A:4, IX (Supp. 2014), which authorizes the remedies

set forth in RSA 358-A:10 (2009) for violations of the right to quiet enjoyment. The landlord argues that the trial court "based the award on a breach of 'habitability,'" which cannot support daily damages under RSA 540-A:4, IX.  See Crowley, 147 N.H. at 391.  The interpretation of a trial court order is a question of law, which we review de novo.  Fischer v. Superintendent, Strafford County House of Corrections, 163 N.H. 515, 519 (2012).

We conclude that the trial court based its award upon violation of the tenant's right to quiet enjoyment.  The trial court stated multiple times throughout its order that the landlord had deprived the tenant of her right to quiet enjoyment.  Although it also stated that "[s]eptic contamination is an issue of habitability and human safety and should be remediated immediately," this statement did not conflict with its specific finding of "a violation of the tenant's right to quiet enjoyment."  Cf. In the Matter of Salesky & Salesky, 157 N.H. 698, 703 (2008) (in construing trial court order, we interpret it with reference to issues it was intended to decide and construe its subsidiary clauses so as not to conflict with its primary purpose).

The evidence submitted would support findings both that the warranty of habitability and the tenant's right to quiet enjoyment were violated.  The tenant testified that, due to the fecal material that flooded the bathroom and entered the bedroom, hall, and kitchen, at the time of the hearing she had been displaced from the apartment for almost two weeks.  She further testified that, as of the hearing, the landlord still had not remediated the problem.  The landlord agreed that the tenant had not been living in the apartment since the septic overflow, that the tenant was requested not to stay in the apartment until it was cleaned, and that the apartment had not been cleaned prior to the hearing.

The landlord argues that "[g]iven the nature of the original causation, the delay in this case was not 'substantial.'"  The trial court found that the apartment was "flood[ed with] black septic water on February 5" and "[a]s of February 17, the septic overflow had not been remediated."  The landlord does not state when she remediated the problem, but merely represents that "[s]ubsequent Court files suggest the [tenant] resumed occupancy of the apartment at some point prior to the end of February 2015."  Given the nature of the problem, we conclude that the evidence presented reasonably supported the trial court's finding that the tenant lost the use of the apartment for a substantial period of time and that its decision that the landlord violated the tenant's right to quiet enjoyment is consonant with applicable law.  See Miller, 150 N.H. at 659.

We next address whether the landlord's violation was willful.  We note that the trial court stated that landlord's failure to address the septic issue promptly was neglectful, not willful.  However, the trial court then ruled that the landlord violated the tenant's right to quiet enjoyment for four days, from the day the landlord became aware of the trial court's temporary order that she clean up the septic waste immediately to the day of the hearing.  In context, we interpret the

2

trial court's order as finding that the landlord's actions became willful once she received the temporary order.  See Fischer, 163 N.H. at 519; Nordic Inn Condo. Owners' Assoc. v. Ventullo, 151 N.H. 571, 586 (2004) (we assume trial court made all subsidiary findings necessary to support its decision); see also Salesky, 157 N.H. at 703.

The landlord argues that any breach of the tenant's right to quiet enjoyment was not willful because the event that caused "the conditions in the apartment was beyond [her] control" and "she made attempts to accomplish some type of remediation by calling several vendors."  We note, however, that the landlord testified that she called two vendors, neither of which had the proper equipment to remediate the problem.  Although the landlord may not have caused the overflow, it was her responsibility to clean the apartment after it occurred.  See Kline v. Burns, 111 N.H. 87, 92 (1971) (stating implied warranty of habitability in every lease requires landlord to maintain essential facilities in condition that makes property livable).  We conclude that calling "several" vendors over a period of almost two weeks did not discharge this responsibility.

The landlord argues that the trial court "established a 'per se' standard that because the work was not done, it was automatically 'willful' failure to do so" and that it "eliminate[d] the requisite 'state of mind.'"  "Willful" is a word of many meanings depending upon the context in which it is used.  Rood v. Moore, 148 N.H. 378, 379 (2002).  In a similar context, we have held that "[t]he term 'willfully' . . . denotes a voluntary and intentional act, and not a mistaken or accidental act."  Randall v. Abounaja, 164 N.H. 506, 508 (2013) (interpreting "willfully" in context of RSA 540-A:3, I).  The evidence must be sufficient to show that the landlord intentionally violated her duty; it is not necessary to show that she also intended all consequences resulting from the violations.  See Kessler v. Gleich, 156 N.H. 488, 495 (2007) (interpreting "willfully" in context of fiduciary duty).

The landlord did not contest that she knew of the septic overflow when it occurred.  Nor did she contest that she failed to remediate the resulting contamination prior to the hearing, despite having been ordered to do so immediately.  She made no claim of mistake or accident regarding her actions.  Furthermore, the trial court did not find the landlord's conduct to be willful until she failed to comply with its order to clean the apartment "immediately," which it issued a week after the overflow.

The landlord argues that her failure to remediate the septic overflow was not willful because she had no duty to repair the apartment.  However, landlords have a common law duty to maintain leased premises in a habitable condition.  Kline, 111 N.H. at 92.  The landlord argues that the trial court "made no finding on [her] financial or physical capability . . . to immediately remediate the conditions" in the apartment.  However, beyond stating that she could not afford to pay for remediation before receiving insurance funds and that she had called two vendors, the landlord offered no evidence of her incapacity.  Moreover, the

court was not required to accept her testimony concerning her financial inability to remediate the septic problem.

Accordingly, we conclude that the evidence reasonably supports the trial court's finding that the landlord willfully violated the tenant's right to quiet enjoyment after the issuance of its preliminary order and that the court's decision is consonant with applicable law. See Miller, 150 N.H. at 659.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,**
**Clerk**

4