NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

9th Circuit Court-Nashua Family Division
No. 2019-0734


IN THE MATTER OF MICHAEL GREENBERG AND ANNE GREENBERG

Argued: November 10, 2020
Opinion Issued: March 24, 2021


Brennan, Lenehan, Iacopino & Hickey, of Manchester (William J. Quinn on the brief and orally), for the petitioner.


Smith-Weiss Shepard & Spony, P.C., of Nashua (Robert M. Shepard on the brief and orally), for the respondent.


HICKS, J. The petitioner, Michael Greenberg (Father), appeals an order of the Circuit Court (Derby, J.) that modified his child support obligation as it pertains to his shares of vested restricted stock and ordered him to pay child support arrearages of nearly $91,000 to the respondent, Anne Greenberg (Mother). We affirm.

I. Facts

The following facts are derived either from the trial court's order or the content of documents in the appellate record. The parties were married in 2003. Their final divorce decree was entered in December 2015. They have two sons, one born in May 2004 and another born in May 2006.

Since approximately June 2015, Father has worked at a publicly-traded company that periodically awards him shares of restricted stock. When Father first joined the company, he was awarded 5,000 such shares. He has since received additional restricted stock awards.

The shares of restricted stock vest over time: after one year (assuming Father has remained with the company), the company releases one-fourth of the shares to him, less an amount the company withholds to pay some of the taxes owed on the shares; over the next three years (assuming Father's continued employ by the company), the company releases one-sixteenth of the shares on a quarterly basis. When the shares are released to Father, they are put into a brokerage account for him to keep or sell, as he pleases. If the shares are released during a "blackout period," Father cannot sell them until the blackout period is over. Father usually sells the shares as soon as he is able to do so. Since the parties' December 2015 divorce, Father has netted $324,856.63 from the sale of vested restricted stock.

The shares of vested restricted stock are listed as "taxable benefits" on his paystub. Father testified that the restricted stock awards are "part of [his] total compensation," and that the Internal Revenue Service treats his vested restricted stock as income. According to Father, the purpose of the restricted stock awards is to provide employees with an incentive to remain with the company. In addition to receiving periodic restricted stock awards, Father participates in an employee stock purchase program and a discretionary bonus program.

As pertinent to the instant matter, the parties' final divorce decree awarded Father "any stock options he may have an interest in with [his current employer] free of any interest on the part of [Mother]." The uniform support order issued with the decree required Father to pay Mother "28% of any bonus he may receive within 3 days of receipt" as child support in addition to regular monthly child support.

Neither the decree nor the uniform support order expressly referred to Father's restricted stock awards. Father did not include the initial 5,000 shares of restricted stock he received on his financial affidavit submitted during the parties' divorce proceedings; none of those shares had vested as of the time of the decree. Nor did he voluntarily disclose to Mother when he sold restricted stock. He also did not pay any portion of those proceeds as child support.

In May 2019, Mother filed a motion to modify child support "based upon a three (3) year review and possibly based upon a significant change of financial circumstances." Mother alleged that "upon information and belief, [Father] [had] obtained a significant increase in income since the divorce became final" in December 2015. After further pleadings, the court held a

hearing on "whether the money [Father] has earned by selling the [restricted stock] over the years should be treated as a bonus upon which he should have paid child support . . . , or whether the [restricted stock] fall[s] under [the] property division" set forth in the parties' December 2015 final divorce decree.

Following the hearing, the trial court ruled that the restricted stock awards function like retention bonuses, rewarding key employees such as Father for remaining at the company for one year or more, and, therefore, upon vesting, constitute income for child support purposes. See RSA 458-C:2, IV (2018). The trial court calculated that, since the parties' December 2015 divorce through September 2019, Father had realized $324,856.63 in proceeds from the sale of vested restricted stock. Consistent with the parties' divorce decree, the court ordered him to pay 28% of that amount ($90,959.86) as child support.

Going forward, the court ordered Father to pay, as child support, a lesser percentage, 26%, of the net proceeds from the sale of any vested restricted stock. The court stated that if Father did not sell the vested restricted stock "within 14 days of the first date after [the stock's] release and outside the blackout period when he could sell [it], child support will be paid at 26% of the actual shares released to [Father] (exclusive of the shares held back for taxes) at the intraday average between the high and low price for the stock on the first trading day when [he] could sell the stock." The court ordered Father to make payments on April 1, August 1, November 1, and January 1 of each year.

Father moved for reconsideration, arguing, among other things, that: (1) because Mother's motion to modify child support did not mention his restricted stock awards, he had no notice that his failure to pay child support on the proceeds from the sale of vested restricted stock would be at issue; and (2) the court erred "in applying its order retroactively to 2015" given that Mother's motion to modify was filed in May 2019. The trial court denied these aspects of Father's motion. This appeal followed.

II. Analysis

A. Standards of Review

Trial courts have broad discretion in reviewing and modifying child support orders. In the Matter of Ndyaija & Ndyaija, 173 N.H. 127, 140 (2020). They are in the best position to determine the parties' respective needs and their respective ability to meet those needs. In the Matter of Feddersen & Feddersen, 149 N.H. 194, 196 (2003). We will not disturb the trial court's rulings regarding child support absent an unsustainable exercise of discretion or an error of law. Ndyaija, 173 N.H. at 140. We review only whether the record establishes an objective basis sufficient to sustain the discretionary judgment made, and we will not disturb the trial court's determination if it

could reasonably have been made.  In the Matter of Summers & Summers, 172 N.H. 474, 479 (2019).  Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence.  Id. We will not substitute our judgment for that of the trial court.  Id.  Nor will we reweigh the equities.  Id.

The trial court's discretion necessarily extends to matters such as assigning weight to evidence and assessing the credibility and demeanor of witnesses.  Id.  Conflicts in the testimony, questions about the credibility of witnesses, and the weight assigned to testimony are matters for the trial court to resolve.  Id.  The trial court's factual findings are binding upon this court if they are supported by the evidence and are not legally erroneous.  Id.  "If the court's findings can reasonably be made on the evidence presented, they will stand."  In the Matter of Letendre & Letendre, 149 N.H. 31, 36 (2002). However, to the extent that resolving a modification issue requires that we interpret pertinent statutes, we review the trial court's statutory interpretation de novo.  Summers, 172 N.H. at 479.

B.  Requiring Father to Pay Percentage of Value of Vested Restricted Stock as Child Support

Father first challenges the trial court's order that he pay a percentage of the value of his vested restricted stock to Mother as child support, even if he chooses not to liquidate the stock.  He argues, in effect, that his vested restricted stock constitutes an asset that is not includable as income for child support purposes.  He contends that it does not become income for such purposes until he sells it.

"Gross income" for child support purposes is defined as "all income from any source, whether earned or unearned, including, but not limited to, wages, salary, commissions, tips, annuities, social security benefits, trust income, lottery or gambling winnings, interest, dividends, investment income, net rental income, self-employment income, alimony, business profits, pensions, bonuses," and payments from certain government programs.  RSA 458-C:2, IV. RSA 458-C:2, IV(c) allows a court, "in its discretion," to "order that child support based on one-time or irregular income be paid when the income is received, rather than be included in the weekly, bi-weekly, or monthly child support calculation."  Under RSA 458-C:2, IV(c), "[s]uch support shall be based on the applicable percentage of net income."

Assets are not specifically included in this statutory definition, and we have consistently held that "[t]he child support guidelines turn on the obligor parent's income available for support, and not on the parent's net worth."  In the Matter of Hampers & Hampers, 166 N.H. 422, 436 (2014); see RSA 458-C:3 (2018) (establishing formula for calculating child support obligation based

4

upon net income, not assets); see also In the Matter of Jerome & Jerome, 150 N.H. 626, 632 (2004) ("Under our legislative scheme, assets are not 'income' for child support purposes."); In the Matter of Plaisted & Plaisted, 149 N.H. 522, 525 (2003) ("If the legislature had intended to allow courts to consider assets when calculating child support, it could have broadened the guidelines to so provide . . . ."). Thus, we have held that "the trial court cannot consider a parent's assets when calculating child support." Plaisted, 149 N.H. at 523, 525.

Contrary to Father's assertions at oral argument, liquidity is not dispositive as to whether something is characterized as an "asset" or as "income for child support purposes." In Plaisted, for instance, although the obligor's savings account contained $50,000, we held that it constituted an asset and, therefore, that the trial court erred by including it as income for child support purposes. Id. at 523, 526.

We find our decision in Dolan instructive. See In the Matter of Dolan and Dolan, 147 N.H. 218, 222 (2001). The stock options in Dolan allowed the petitioner to purchase his employer's stock at a set price; to exercise them, he purchased stock at that price. Id. at 220. We explained that "[u]pon the exercise of the options, the petitioner may realize a paper profit, which is the difference between the set price and the market price when he exercised the option." Id. We further explained that "[o]nce the stocks are sold, the petitioner may realize an actual profit, which may be more or less than the paper profit he realized when he exercised the option." Id.

We held that the petitioner's exercised stock options "must be included as income for the purposes of calculating child support" because "such options are analogous to a 'bonus'" and "are also included within the phrase 'all income from any source.'" Id. at 221 (quotation omitted). We explained that treating the petitioner's exercised stock options as income was "necessary to meet the policy goals of the child support laws," which are to "minimize the economic consequences of divorce on the children and ensure that they enjoy a standard of living equal to that of the [parent's] subsequent family." Id. at 222; see RSA 458-C:1 (2018).

We apply the same reasoning to this case. The restricted stock awards here are part of Father's compensation package, just as the stock options in Dolan were part of the petitioner's compensation package. See Dolan, 147 N.H. at 221-22. Father's vested restricted stock awards, similar to the petitioner's exercised stock options in Dolan, see id., operate like a bonus, and, therefore, expressly meet the broad statutory definition of "gross income" for child support purposes. See RSA 458-C:2, IV. Because Father's vested restricted stock awards constitute income for child support purposes, we necessarily reject his assertion that, by requiring him either to liquidate his vested restricted stock and pay a percentage of the liquidated amount as child support

or to retain the stock and pay a percentage of its value as child support, the trial court "disallow[ed] him any discretion with respect to assets acquired after the divorce."

To the extent that Father argues that the trial court's child support order impermissibly modified the parties' divorce decree, we disagree. Even if we were to agree with him that the restricted stock awards were distributed to him in the divorce as property, doing so would not preclude the trial court from treating vested restricted stock as income for child support purposes. Under New Hampshire law, an asset may be equitably distributed to a party and the income from the asset may be used to determine child support. See Rattee v. Rattee, 146 N.H. 44, 49 (2001). For instance, in Jerome, where a personal injury settlement was paid out as an annuity, we noted that "even if the parties had agreed that the personal injury settlement was marital property, the trial court would not be precluded from treating it as income for child support purposes" because "property division and child support serve different functions and are governed by different requirements." Jerome, 150 N.H. at 633.

To the extent that Father intimates that the trial court was somehow biased against him, we note that "[a]dverse rulings against [a party] in the same or a prior judicial proceeding do not render the judge biased," and otherwise decline to address his argument because it is insufficiently developed for our review. State v. Bader, 148 N.H. 265, 271 (2002) (quotation omitted).

Father argues that requiring him "to pay child support based on the value" of his vested restricted stock forces him to "incur taxes"; however, "[g]enerally, [an] employee must recognize taxable income . . . when the restricted stock vests, whether or not it is simultaneously sold." Brian C. Vertz, In the Money or Under Water?, 41 Fam. Advoc. 39, 40 (2018) (emphasis added). Thus, regardless of whether Father liquidates his vested restricted stock, the value of the stock is taxable to him.

C. Arrearage

Father next challenges the trial court's order that he pay nearly $91,000 in past due child support. Father argues that he had no notice that his failure to pay child support would be addressed in the modification proceedings because "[t]here was nothing in the pleading suggesting [Mother] was seeking review of past due child support, nor did any pleading reference [his] . . . restricted stock units, or any claim that [he] owed her child support from the liquidation of the restricted stock."

We are not persuaded. Father had notice from the divorce decree itself that he was required to pay 28% of all bonuses as child support. Father had notice, as well, from the language of the pertinent statute, that the statutory

6

definition of "gross income" for child support purposes includes bonuses, see RSA 458-C:2, IV.  As the trial court aptly ruled:

> [T]he record seems clear that [Father] took a calculated risk when he did not pay any child support on the [restricted stock awards] he received and promptly sold after the final decree.  He did not voluntarily disclose the sales when they happened, and then he . . . apparently resisted discovery on the subject for a short period.  Based on how the [restricted stock awards] worked and the amount of money at stake, the court finds that [Father] was well aware (and had actual notice) long before [Mother] brought the matter forward that he would be called upon to defend his decision not to pay any child support on the money he received when the [restricted stock awards] vested and were sold.  Nothing came as a surprise and the issue was framed and thoroughly presented to the court at the final hearing.

Father cannot claim lack of "notice" when his own conduct prevented Mother from knowing that he had failed to pay child support on the net proceeds he realized from the sale of the vested restricted stock.

Father next contends that "[t]he issue of a retroactive award of child support is, by its nature, not an action under NH RSA 458-C:7," the statute governing motions to modify child support, "because that relief is expressly prohibited."  He argues that, for Mother to obtain that relief, she "would have had to have filed another request, under a different statute or theory of recovery."

Father's argument misperceives what occurred in this case.  The trial court did not issue a "retroactive award of child support."  Nor did it retroactively modify the child support originally ordered in the parties' final decree.  Rather, the court enforced the child support order entered as part of the parties' final divorce decree, which ordered Father to pay Mother as child support 28% of any bonus he received.  To the extent that Father contends that the finding of an arrearage under the terms of the original order is not relief Mother requested and/or is not relief available in a proceeding to modify a child support order, based upon our review of the record, we conclude that Mother's motion to modify was constructively amended and that Father has failed to demonstrate any unfair prejudice from the amendment.  See Miller v. Slania Enters., 150 N.H. 655, 659-60 (2004) (concluding that the trial court did not err by awarding damages under a theory not pleaded by the tenant where the landlord did not object to evidence or argument on the theory, responded to the theory in a post-trial memorandum, and otherwise failed to demonstrate any unfair prejudice arising from the court's consideration of the issue).

III.  Conclusion

For all of the above reasons, therefore, we uphold the trial court's order modifying Father's child support obligation as it pertains to his shares of vested restricted stock and requiring him to pay child support arrearages to Mother.[1]

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[1] On November 16, 2020, the petitioner filed a "Motion to Correct the Record of the November 10, 2020 Oral Argument" in which he challenged certain statements made by counsel for the respondent at oral argument.  As the court did not rely upon either challenged statement in deciding this appeal, the motion is denied as moot.